SOUTHERN PACIFIC TRANSPORTATION COMPANY; George Gregson; Patricia Gregson Millington; and Edwin J. Gregson, Plaintiffs–Appellants,

v.

CITY OF LOS ANGELES; and California Department of Transportation, Defendants–Appellees.

No. 89–55100.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1990.

Opinion Filed Sept. 7, 1990.

Opinion Amended Nov. 9, 1990.

Opinion Withdrawn Dec. 4, 1990.

Order and Opinion Filed Dec. 4, 1990.

Thomas F. Winfield, III and Vicki E. Land, Brown, Winfield & Canzoneri, Inc., Los Angeles, Cal., for plaintiffs-appellants.

Patricia V. Tubert, Deputy City Atty., Los Angeles, Cal., for defendant-appellee.

Christopher Hiddleson, Los Angeles, Cal., for defendant-appellee, California Dept. of Transp.

Before NELSON, NORRIS and O'SCANNLAIN, Circuit Judges.

## ORDER

The mandate of this court, issued October 1, 1990, is recalled.

The amended opinion filed November 9, 1990 is hereby withdrawn and the attached opinion is filed in its stead.

DOROTHY W. NELSON, Circuit Judge:

## OVERVIEW

Appellants own real property in the City of Los Angeles which once was dedicated as a railroad right-of-way. The right-of-way was formally abandoned, and the city subsequently applied a zoning designation to the property which indicates that it may be used for surface parking only. Appellants complain that by this action the city, in conspiracy with other public agencies, took their property without just compensa-

1. Appellants own some, but not all, of this for-

tion and violated their rights to due process and equal protection.

The district court dismissed the complaint as to defendant California Department of Transportation (Caltrans) on eleventh amendment grounds. The court then entered summary judgment in favor of all other defendants, finding that the just compensation claims were not "ripe" for federal adjudication and that no genuine issue of material fact remained regarding the due process and equal protection claims.

The district court was correct in concluding that plaintiffs' just compensation claims were unripe. The correct disposition of unripe claims is dismissal. Therefore, as to plaintiffs' as-applied takings, equal protection and due process claims and plaintiffs' facial takings claim, we vacate the judgment and remand with instructions to dismiss for lack of jurisdiction. We affirm the judgment as to plaintiffs' facial due process and equal protection claims.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants own real property in the City of Los Angeles which once consisted of part of a railroad right-of-way. The former right-of-way was laid out in two long, narrow strips; one parallels Santa Monica Boulevard from the Beverly Hills city limit west to Sepulveda Boulevard, and the other parallels Sepulveda Boulevard from Santa Monica Boulevard south to Pico Boulevard.[1] Each of these strips is broken into numerous segments by cross streets. The strip which parallels Santa Monica Boulevard averages 50 feet in width, while the Sepulveda strip is 40 feet wide.

In the early 1980s, the railroad right-of-way bore a variety of residential, commercial, and industrial zoning designations, generally consistent with adjacent zoning in the neighborhoods through which the railroad ran. These designations had little practical effect as long as the rails were in use, since the property could not be physically developed anyway.

mer right-of-way.

By 1983, rail traffic on these routes had become very light, and Southern Pacific petitioned the Interstate Commerce Commission (ICC) for permission to abandon the right-of-way.

In September 1983, the Los Angeles City Council responded to the petition for abandonment by initiating proceedings to rezone the properties to the [Q]P–1 zone, which permits surface parking only. The proposal was sent to the City Planning Department, and hearings were held. Appellants opposed the rezoning in those hearings, but the record does not indicate that they forwarded a development proposal or suggested any alternatives other than continuance of the preexisting zoning.

On October 4, 1985, the City Council adopted ordinances implementing the rezoning. The Council made written findings which indicate that the reasons for the rezoning included concern for the unique shape and configuration of the properties, a lack of adequate parking facilities in the vicinity of the properties, and continuity with existing uses on the properties, some of which had been converted to parking use after abandonment of the railroad.

Appellants assert that these findings do not reflect the City's real reasons for the rezoning. They claim that the City and the other public agency appellees were exploring the possibility of acquiring the subject properties for transportation projects, and that the downzoning was intended to depress the value of the properties and prevent the construction of buildings so as to reduce the cost of acquisition. The record does indicate that various public agencies had been considering transportation improvements along the Santa Monica Boulevard corridor for years, and that these agencies were concerned about losing the opportunity to acquire this property if it were developed. The record also reflects that both the City Planning Department hearing examiner who considered the Santa Monica Boulevard zone change and the City Planning Commission cited preservation of the land for future transportation uses as one reason for the downzoning, although the City Council did not include this in its final list of findings. There is little evidence in the record that these same transportation concerns ever applied to the Sepulveda properties.

Since the time of the rezoning, appellants have filed no applications with the City to propose development of the properties. One of their lessees did file an application for a minor variance, seeking permission to operate a surface parking lot on the property enclosed only by a fence, rather than the concrete block wall required by the zoning code. This request was denied by a zoning administrator in the City Department of Building and Safety. The record does not indicate that this denial was appealed.

The record contains no evidence that appellants had ever sought compensation for the alleged taking through other channels before filing this federal complaint.

Appellants filed this action in the district court on January 29, 1986. The complaint contained three counts: Count One alleged violation of appellants' federal constitutional rights to just compensation, due process, and equal protection under the fifth and fourteenth amendments and 42 U.S.C. section 1983, Count Two was a pendent state claim under the California Constitution, and Count Three alleged violations of the California Environmental Quality Act (CEQA). In addition to the City of Los Angeles, the complaint named the County of Los Angeles, the Los Angeles County Transportation Commission (LACTC), and Caltrans as defendants. Although the rezoning, over which the City of Los Angeles had sole authority, was the act which appellants claimed had caused them direct injury, the other agencies were alleged to have conspired with the City in preparation for this action.

The district court granted an early motion by Caltrans to dismiss without leave to amend on eleventh amendment grounds. This appeal includes an appeal of Caltrans' dismissal. The district court also dismissed the CEQA claim as to all defendants and this has not been appealed.

On May 20, 1988, the district court granted summary adjudication of a single issue in favor of plaintiffs, ruling that their "fa-

cial" constitutional claims were ripe for federal adjudication. The same order granted summary judgment in favor of defendants on all "as-applied" constitutional claims, ruling that the claims were unripe because plaintiffs had never filed a meaningful development application.

On December 14, 1988, the district court entered an order granting a motion for reconsideration of its May 20 order and subsequently entered summary judgment in favor of appellees on all claims.[2] Specifically the court found that all just compensation claims were unripe because even the facial claims required plaintiffs to seek compensation before filing suit. The court also found that there were no genuine issues of material fact regarding the due process and equal protection claims.

The notice of appeal was timely filed on January 10, 1989.[3]

## DISCUSSION

### I. Standard of Review

■ A grant of summary judgment is reviewed de novo to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there existed any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

Ripeness for federal adjudication is a question of law reviewed de novo. *Hoehne v. County of San Benito*, 870 F.2d 529, 531 (9th Cir.1989).

### II. Ripeness for Federal Adjudication

#### A. Ripeness Defined

■ Constitutional challenges to local land use regulations are not considered by federal courts until the posture of the challenges makes them "ripe" for federal adjudication. Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed. *Shelter Creek Dev. Corp. v. City of Oxnard*, 838 F.2d 375, 377 (9th Cir.), *cert. denied*, 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 106 (1988). This deficiency may be raised sua sponte if not raised by the parties. *Id.*

#### B. Ripeness Under the Just Compensation Clause

##### 1. As-applied Claim

■ Ripeness of an as-applied challenge (i.e., a claim that as applied to a particular property a statute effects an uncompensated taking) involves two independent prerequisistes. First, since a court cannot determine whether a taking has occurred unless the extent of permissible development is clear, plaintiffs alleging an as-applied taking must show that they have obtained "a final and authoritative determination of the type and intensity of development legally permitted on the subject property." *MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 348, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986).

**2.** In their opening brief, appellants argue that because the memorandum which accompanied the judgment did not explicitly discuss the pendent state claim, there is confusion as to whether the judgment disposed of that claim. The notice of appeal indicates that appellants initially considered the judgment to be final and dispositive of all claims.

We agree with the appellants' first inclination. The judgment order of December 14, 1988 states that "defendants ... are entitled to summary judgment.... plaintiffs shall have and recover nothing against defendants." This judgment clearly disposes of all claims brought by appellants against defendants including their pendent state claim.

On appeal appellants never discussed the merits of their pendent state claim. As a general rule, matters that are not specifically and distinctly raised and argued in appellants' opening brief are not considered by this court. *International Union of Bricklayers Local 20 v. Martin Jaska Inc.*, 752 F.2d 1401, 1404 (9th Cir.1985). In the instant case, because the merits have not been explored by either party and appellees were never notified that the merits would be an issue on appeal, we will follow the general rule and decline to review the portion of the district court's order granting summary judgment on the state pendent claim.

**3.** During the pendency of this appeal, appellants settled with appellee LACTC and the County of Los Angeles.

Second, since the Constitution does not prohibit takings, but only takings without just compensation, "if a State provides an adequate procedure for seeking just compensation," plaintiffs may not bring as-applied claims to federal court until they have "used the procedure and been denied just compensation." *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985). For the reasons which follow, we find that Southern Pacific and the other plaintiffs have met neither of these requirements and that the district court was correct in concluding that their claims are unripe for federal adjudication.[4]

### a. Final Determination Regarding Allowable Development

#### (i). In General

■ In applying the "final determination" requirement, courts have emphasized that local decision-makers must be given an opportunity to review at least one reasonable development proposal before an as-applied challenge to a land use regulation will be considered ripe. *E.g., Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454 (9th Cir.), *modified*, 830 F.2d 968 (1987), *cert. denied*, 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988). The development proposal must be "meaningful," which means that rejection of "exceedingly grandiose development plans" is insufficient to show that the local agency does not intend to allow reasonable

development. *MacDonald*, 477 U.S. at 353 n. 9, 106 S.Ct. at 2568 n. 9. By the same token, other requests may be so minor that denial does not give a fair indication of how a comprehensive development plan would be handled.

The meaningful application requirement also mandates that claimants pursue the application thoroughly and not abandon it at an early stage. *See Kinzli*, 818 F.2d at 1455. Those who have not followed available routes of appeal cannot claim to have obtained a "final" decision, particularly if they have foregone an opportunity to bring their proposal before a decisionmaking body with broad authority to grant different forms of relief or to make policy decisions which might abate the alleged taking.[5]

■ The meaningful application requirement is not waived when a zoning ordinance only appears not to permit a reasonable economic return on a piece of property. In such cases, property owners are required to seek a reasonable return by applying for such variances as would provide it. *Hamilton Bank*, 473 U.S. at 172–73, 105 S.Ct. at 3109–10; *Kinzli*, 818 F.2d at 1454. The term "variance" is not definitive or talismanic; if other types of permits or actions are available and could provide similar relief, they must be sought. *See Hoehne*, 870 F.2d at 533–35 (discussing availability of relief via conditional use per-

---

4. Exhaustion of state remedies is ordinarily not required for actions brought pursuant to 42 U.S.C. § 1983. *Patsy v. Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). However, the Supreme Court has held that "[t]he question whether administrative remedies must be exhausted is conceptually distinct ... from the question whether an administrative action must be final before it is judicially reviewable," *Hamilton Bank*, 473 U.S. at 192, 105 S.Ct. at 3119, and that ripeness of claims like this one may therefore be predicated on obtaining a final determination regarding permitted uses. *Id.* at 193, 105 S.Ct. at 3120. The court also held that the language of the fifth amendment requires property owners to utilize *procedures for obtaining just compensation* before alleging a taking in a section 1983 action. *Id.* at 194 n. 13, 105 S.Ct. at 3120 n. 13.

5. Courts have imposed the meaningful application requirement even in instances where a regulation appeared on its face to be highly restrictive. One reason for this is that local agencies have wide authority to grant relief which might keep the regulation from denying the owner a reasonable economic return. "The local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other." *MacDonald*, 477 U.S. at 350, 106 S.Ct. at 2566 (discussing *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)). This flexibility is obviously useless if property owners abandon their applications after rejection by civil servants with narrow authority and before seeking relief from a body with broader powers.

mit, zone change, or General Plan amendment).[6]

In this case, appellants have failed to satisfy the meaningful application requirement. Although they opposed the rezoning of the subject properties between 1983 and 1985, they gave no indication at that time of how they might intend to develop the property if permitted to do so. They filed no meaningful applications for development of the property, for variances, or for any other form of relief before filing this federal complaint.[7] To address this claim in this posture, federal courts would be required to guess what possible proposals appellants might have filed with the City, and how the City might have responded to these imaginary applications. It is precisely this type of speculation that the ripeness doctrine is intended to avoid. *Kinzli*, 818 F.2d at 1454. Since no meaningful application has been made, there has been no final determination regarding allowable development of these properties and the district court properly concluded that appellants' as-applied claim is not ripe for federal adjudication.

### (ii). The Futility Exception

■ Appellants contend that they should be excused from filing a meaningful application in this case, because the City's action in downzoning the properties makes it clear that any such application would be futile. While it is true that something called a "futility exception" exists, this exception serves only to protect property owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved. The futility exception does not alter an owner's obligation to file one

meaningful development proposal. *Kinzli*, 818 F.2d at 1455.

Appellants rely heavily on *Hoehne*, but their reliance is misplaced. In *Hoehne*, a property owner had made an application to divide a 60–acre parcel of land into four lots, with one home to be placed on each. The local board of supervisors denied the subdivision request, and immediately rezoned the property to a zone having a minimum lot size of 40 acres. The court held that this constituted a final determination of the permitted use of the Hoehnes' land, and that the Hoehnes were not required to apply for further variances or other types of permits before coming to court. 870 F.2d at 535. The *Hoehne* court emphasized that the meaningful application requirement had already been satisfied by the subdivision request; the only thing excused by invocation of the futility exception was "[r]e-application and re-submission." *Id.*

Appellants are not helped by the futility exception because, unlike the Hoehnes, they have never filed a meaningful application.

### b. Denial of Just Compensation

The second prong of the ripeness inquiry provides an additional reason why the as-applied claims are unripe. Appellants cannot claim a taking without just compensation unless they have sought compensation through any reasonable procedure provided by the state. *Hamilton Bank*, 473 U.S. at 194–97, 105 S.Ct. at 3120–22. To determine whether such procedures were available, courts look to the time when the alleged taking occurred. *Id.* at 194, 105 S.Ct. at 3120; *Hoehne*, 870 F.2d at 534. Appellants consider this important because the alleged taking in this case took place before the U.S. Supreme Court ruled in *First English*

---

**6.** The *Hoehne* court found that the Hoehnes were excused from seeking these types of relief, but only because the facts of that case fell within the "futility exception" discussed *infra.*

**7.** Appellants point to the minor variance denied to one of their lessees as evidence of a previous application, but that request was not meaningful. Refusal to permit erection of a fence rather

than a wall around a parking lot gives no indication of how the City would respond to a major development application. The decision was based on specific safety and aesthetic concerns which would not pertain to other proposals. It was also the decision of a zoning administrator with limited authority to grant relief, and the available appeal apparently was not taken. *See id.* at 501.

*Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) that money damages must be available as a remedy when it is determined that a land use regulation has worked a taking. Prior to *First English*, the general rule in California was that landowners could seek only declaratory relief or mandamus in such cases, not damages. *Agins v. Tiburon*, 24 Cal.3d 266, 275–77, 598 P.2d 25, 29–31, 157 Cal. Rptr. 372, 376–78 (1979), *aff'd on other grounds*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). Appellants claim that under *Agins*, there was no procedure available by which they might have sought compensation before resorting to federal court.

This claim is incorrect because the complaint filed in this action alleges unreasonable precondemnation activity, a cause of action for which money damages were available in California both before and after *Agins*. The essence of Southern Pacific's complaint is that "[t]he City Council's act of down-zoning the Subject Properties was unreasonable conduct taken by the City in anticipation of the condemnation of Plaintiffs' properties." Appellants assert that appellees sought to depress the value of these properties so that they could be acquired through eminent domain more cheaply than would otherwise have been possible.

The California Supreme Court ruled in *Klopping v. City of Whittier* that such wrongs were compensable. 8 Cal.3d 39, 52, 500 P.2d 1345, 1355, 104 Cal.Rptr. 1, 11 (1972). *Agins* did not eliminate this cause of action. In *Toso v. City of Santa Barbara*, 101 Cal.App.3d 934, 162 Cal.Rptr. 210 (1980), the California Court of Appeal held that even after *Agins*, "inequitable zoning actions by a public agency undertaken as a prelude to public acquisition may result in an action for damages." *Id.* at 952, 162 Cal.Rptr. 210.[8]

Under *Klopping* and *Toso*, a procedure for seeking just compensation existed when the alleged taking took place. Appellants failed to seek this compensation before filing their federal complaint. The district court properly concluded that this failure was fatal. Even if a taking had taken place, no claim that the just compensation clause had been violated would be ripe.

## 2. Facial claim

Appellants also have brought a facial challenge to the City's action, in other words, a claim that the mere adoption of the ordinances constitutes an uncompensated taking. The district court found, and we agree, that this claim also is unripe for federal adjudication because plaintiffs have failed to satisfy the just compensation ripeness requirement.

■ *Hamilton Bank* did not address the issue whether the ripeness hurdle, which stands in the way of as-appled challenges, also obstructs their facial counterparts. Indeed, some courts have found that it does not. *See e.g., Crow–New Jersey, 32 Ltd. v. Township of Clinton*, 718 F.Supp. 378, 382–83 (D.N.J.1989) (holding facial challenges immune to either of *Hamilton Bank*'s ripeness tests). Moreover, the Supreme Court often has reached the merits of facial attacks without regard for ripeness considerations. *See, e.g., Keystone Bituminous Coal Ass'n v. DeBenedictus*, 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982); *Hodel v. Virginia Surface Mining & Reclamation Ass'n. Inc.*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); *Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). In light of the ample confusion in this area, we take this opportunity to discuss the relevance of *Hamilton Bank*'s ripeness requirements to facial takings challenges. We conclude that a claim alleging that mere enactment of a statute effects an unconstitutional taking

---

**8.** Even if it were unclear that the *Klopping* cause of action had survived *Agins*, appellants would have been required to test this question by attempting to secure compensation in the state courts. Claimants are required to seek compensation in state courts before filing federal complaints even when state remedies are uncertain and undeveloped. *Austin v. City and County of Honolulu*, 840 F.2d 678, 680–81 (9th Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988).

is unripe unless and until it is known what, if any, compensation is available.[9]

What distinguishes the present case from the above-mentioned Supreme Court precedents is its posture. *Agins, Hodel, Loretto* and *Keystone* all had to do exclusively with the question whether the regulation amounted to a taking. Although the Court reached the merits in each of them, that was only half the inquiry. The question whether just compensation was available, necessary to determine whether the alleged taking was unconstitutional, was simply not reached because it was unnecessary. In *Agins*, the state court denied plaintiffs' takings claim, holding that there simply had been no taking, and therefore no need for compensation. That was the sole question addressed by the Supreme Court. *Agins*, 447 U.S. at 260, 100 S.Ct. at 2141. In *Hodel*, the Court specifically noted that "an alleged taking is not unconstitutional unless just compensation is unavailable." *Hodel*, 452 U.S. at 297 n. 40, 101 S.Ct. at 2371 n. 40. In *Loretto*, the sole issue was whether the physical occupation of the property constituted a "taking" for which "just compensation is due." The Court's decision to reverse the state court rested on the finding that a taking had indeed occurred. The Court went on to say: "The issue of the amount of compensation that is due, on which we express no

opinion, is a matter for the state courts to consider on remand." *Loretto*, 458 U.S. at 441, 102 S.Ct. at 3179.[10]

■ The question we face here is whether the zoning ordinance effected an *unconstitutional, uncompensated* taking. To make this determination, we must first decide whether compensation is available. If such be the case, it would be "unnecessary" to resolve the taking claim for "[w]here the action ... is a taking ... the availability of a suit for compensation ... will defeat a contention that the action is unconstitutional as a violation of the Fifth Amendment." *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 697 n. 18, 69 S.Ct. 1457, 1465 n. 18, 93 L.Ed. 1628 (1949); *see also Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 94 n. 39, 98 S.Ct. 2620, 2641 n. 39, 57 L.Ed.2d 595 (1978). Because appellants have not sought compensation through state procedures, *see supra*, this determination cannot be made. Accordingly, the ordinance is not appropriate for review—it is, as it were, "unripe."

*First Lutheran Church v. Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), one of the few cases to reach the second, remedial question, provides support for the proposition that even facial challenges must overcome the just compensation ripeness hurdle.[11] The case involved a

9. In light of the district court's ruling, we need not decide whether *Hamilton Bank's* first ripeness requirement might also apply to facial challenges. The Supreme Court has not addressed this question directly. In a number of instances, the Court has noted that certain facial challenges are impossible to evaluate absent some factual information regarding how the statute will be applied. This could lead to a ruling on the merits that, facially, the statute's "mere enactment" does not effect a taking, *see e.g., Keystone*, 480 U.S. at 495–96, 107 S.Ct. at 1247, or to a jurisdictional determination that the issue is not ripe for resolution, *see e.g., Pennell v. San Jose*, 485 U.S. 1, 10, 108 S.Ct. 849, 856, 99 L.Ed.2d 1 (1987). The point appears to be that some regulations, by their very nature, are just not subject to facial attack on takings grounds. Prior to their application, in other words, the attacks are simply premature.

10. As Justice Blackmun noted in dissent: "Happily, the Court leaves open the question whether [the statute] provides ... sufficient compensation." *Id.* 458 U.S. at 456 n. 12, 102 S.Ct. at 3187 n. 12 (Blackmun, J., dissenting).

11. This is not to say that all facial challenges to zoning restrictions will be subject to this hurdle. In some instances, as we have seen, it will not be an issue because the court is simply considering whether a taking has occurred, not whether it is a taking "without just compensation." In others, no compensation would be sufficient to cure the constitutional infirmity. Some harms are "impermissible even if the government is willing to pay for them." *Hamilton Bank*, 473 U.S. at 202, 105 S.Ct. at 3124 (Stevens, J., concurring). "For example, even if the State is willing to compensate me, it has no right to appropriate my property because it does not agree with my political or religious views." *Id.* at 202 n. 1, 105 S.Ct. at 3125 n. 1. Likewise,

*facial* takings attack on a local ordinance. The state court had held that, regardless of whether a taking had occurred, no compensation would be available. In reversing, the Supreme Court explicitly noted that plaintiffs had clearly met *Hamilton Bank's* second ripeness requirement (which, it follows, applied), for the State had ruled that plaintiffs could not enjoy its compensatory procedures. *Id.* at 312 & n. 6, 107 S.Ct. at 2384 & n. 6.

In short, in the absence of knowledge regarding the availability of compensation, appellants' challenges to the constitutionality of the ordinance are simply unripe— whether they be dressed in their "as-applied" or "facial" garb.

## C. Other Federal Claims

■ In addition to their just compensation claims, appellants allege that their rights to substantive due process and equal protection were violated by the City's actions. All as-applied challenges to regulatory takings, whether based on the just compensation clause, the due process clause or the equal protection clause, possess the same ripeness requirement: a final determination by the relevant governmental body. *See Pennell,* 485 U.S. at 11 n. 5, 108 S.Ct. at 857 n. 5; *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1404 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990); *Herrington v. County of Sonoma,* 857 F.2d 567, 569 (9th Cir.1988), *cert. denied,* 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989). Thus, appellants' as-applied due process and equal protection claims are as premature as the just compensation claims because the "final determination" requirement, with the concomitant requirement that a meaningful development application be submitted, governs ripeness of these claims as well. *Hoehne,* 870 F.2d at 532; *Shelter Creek,* 838 F.2d at 379; *Kinzli,* 818 F.2d at 1455–56.

Appellants also contend that the mere adoption of the ordinance violated the due process and equal protection clauses. Neither the finality nor the just compensation ripeness requirement applies to such facial challenges. *See Pennell,* 485 U.S. at 11, 108 S.Ct. at 857; *Eide v. Sarasota County,* 908 F.2d 716 (11th Cir.1990).

■ Turning first to the claim that the City has acted arbitrarily in violation of the due process clause, we agree with the district court that appellants have presented us with no genuine issue of material fact. The standard for determining that a zoning ordinance fails to comport with substantive due process is demanding. As stated by the Supreme Court:

> [T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.

*Williamson v. Lee Optical Co.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). The prevention of traffic congestion is reason enough to justify the targeted ordinance. Appellants have not made sufficient factual allegations suggesting that zoning their property for parking was irrational. Accordingly, the zoning classification does not on its face violate the due process clause.

■ Appellants' facial equal protection claim also must fail. Because Southern Pacific does not allege that the regulation discriminates against a suspect class, the standard of review is highly deferential. "[A]ppellees need only show that the classification scheme is 'rationally related to a legitimate state interest.'" *Pennell,* 485 U.S. at 14, 108 S.Ct. at 859 (quoting *New Orleans v. Duke,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976)). The City has set forth plausible reasons for its zoning policy and for its decision to focus on narrow strips of land such as appellants'. Presumably, the zoning might have been more equitable, perhaps even

takings that involve violations of the Equal Protection or Due Process clauses will be found unconstitutional notwithstanding any available

compensation, for neither clause contains a remedial provision.

**508**

more logical, but on its face, the ordinance displays no outward sign of irrationality.

### D. Disposition of Unripe Claims

 Because appellants' takings and as-applied due process and equal protection challenges are unripe, the district court erred in granting summary judgement as to these claims. Ripeness is a threshold jurisdictional question; when claims are unripe the correct disposition is dismissal, not summary judgment. *Lai v. City and County of Honolulu,* 841 F.2d 301, 303 (9th Cir.), *cert. denied,* 488 U.S. 994, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988); *Shelter Creek,* 838 F.2d at 380; *Kinzli,* 818 F.2d at 1457.

### III. Dismissal of Caltrans

The district court dismissed the complaint as to defendant Caltrans, finding that as a state agency it was immune from suit under the eleventh amendment. Appellants argue that because they seek declaratory and injunctive relief, the eleventh amendment does not prohibit suing a state agency.

Appellants are correct that "the Eleventh Amendment does not bar actions against state officers in their official capacities if the plaintiffs seek only a declaratory judgment or injunctive relief." *Chaloux v. Killeen,* 886 F.2d 247, 252 (9th Cir.1989) (internal quotations omitted). However, in this case, appellants did not name state officials of Caltrans in their suit but instead sued Caltrans directly. "[I]n the absence of consent a suit in which the State or one of its agencies or department is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." [12] *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (citations omitted). Therefore, appellants' claims against Caltrans, undisputably a state agency, are prohibited by the elev-

enth amendment even though they sought prospective relief.

### CONCLUSION

For the foregoing reasons, the district court's judgment as to plaintiffs' facial due process and equal protection claims is affirmed. The district court's judgment as to all other claims is vacated and remanded with instructions to dismiss without prejudice for lack of jurisdiction.

AFFIRMED IN PART; VACATED IN PART AND REMANDED.

THE MANDATE SHALL ISSUE FORTHWITH.

---

**12.** The state has not consented to be sued under § 1983 and Congress did not override states' sovereign immunity when it enacted § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989).