983 F.2d 1285
 TAYLOR INVESTMENT, LTD., Colleen Duffy Price, James P.
Duffy, Appellants in 92-1180,
VGM Corporation, Gregory Patlakh, Appellants in 92-1219,
v.
UPPER DARBY TOWNSHIP, Donald C. Phillips, James C. Ward,
Rudolph D'Alesio, Mario L. Civera, Nancy White.
 Nos. 92-1180, 92-1219.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 18, 1992.
Decided Jan. 25, 1993.
Order Denying Petition for Rehearing
and Rehearing In Banc in
No. 92-1180 March 16, 1993.
 
 Ellen Meriwether (argued), Miller, Faucher, Chertow, Cafferty & Wexler, Philadelphia, PA, for appellants Taylor Investment, Ltd., Colleen Duffy Price and James P. Duffy.
 Howard B. Zavodnick, Zavodnick & Zavodnick, Philadelphia, PA, for appellants VGM Corp. and Gregory Patlakh.
 Jeffrey P. Hoyle (argued), William F. Holsten, II, Holsten & White, Media, PA, for appellees.
 Before STAPLETON, SCIRICA and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 
 1
 In this zoning dispute, plaintiffs Taylor Investment, Ltd., Colleen Duffy Price, and James P. Duffy appeal an order of the district court granting summary judgment for defendants. The district court found plaintiffs' civil rights claims, 42 U.S.C. § 1983, were not ripe for judicial review. We agree that plaintiffs' claims are premature.
 
 I.
 
 2
 Taylor Investment owns property in Upper Darby Township, Delaware County, Pennsylvania. Price and Duffy are limited partners of Taylor Investment. The individual defendants are a collection of Township officials: Donald Phillips is the Director of the Department of Licenses and Inspection and the zoning officer for the Township; James Ward was the Mayor of the Township;[1] Rudolph D'Alesio is the Vice President of Township Council; Mario Civera is the State Representative for the 164th Legislative District and the Councilperson-at-large for the Township; and Nancy White is a member of Township Council. Plaintiffs allege that these individuals participated in the decision to revoke a use permit held by plaintiffs' tenant. Plaintiffs assert that the revocation of the permit violated the substantive and procedural due process and equal protection provisions of the Fourteenth Amendment.
 
 A.
 
 3
 The property is located in a district zoned C-1, a classification for neighborhood-commercial establishments such as grocery and variety stores, barber and beauty shops, tailors and dressmakers, banks, and offices for attorneys, realtors, and health care professionals. Upper Darby Zoning Ordinance § 501. The purpose of the C-1 classification, by the terms of the Ordinance, "is to make provisions in appropriate locations for convenience type commercial and service uses primarily to meet the needs of individuals living in the immediate neighborhood." Id.
 
 
 4
 Before plaintiffs purchased the property, the previous owner used it as a health and fitness club, under a nonconforming use granted by the Township's zoning hearing board. That use fell within the C-2 zoning classification for general commercial districts. See Ordinance § 502. When the property was purchased, plaintiffs had the right, under the Ordinance, to operate an establishment as "a nonconforming use of the same or more restricted classification" as that granted to the previous owner. Ordinance § 1202(B). Plaintiffs sought a tenant who would use the property either in conformance with the C-1 neighborhood-commercial classification or as a continuation of the previous nonconforming use. Gregory Patlakh approached plaintiffs, seeking to rent the property and open a "physical fitness/sports center."
 
 
 5
 On July 26, 1990, Patlakh applied to the Township for a use permit. Under the Township's Ordinance, a use permit serves two primary functions. First, the use permit application allows the zoning officer to determine whether the intended use conforms to the allowed uses of the property under the zoning laws. Ordinance § 1601. Second, the use permit is a necessary predicate to any structural alteration of the property. Id. A use permit application must "contain all information necessary for [a] Zoning Officer to ascertain whether the proposed ... alteration, use, or change in use complies with the provisions" of the zoning laws. Id.
 
 
 6
 In his use permit application, Patlakh asked for permission to "operate a physical fitness/sports center with indoor golf, basketball, billiards and ... snack bar." The Township's zoning officer, Donald Phillips, issued a use permit on August 1, 1990, describing the authorized use as a "physical fitness/sports center." Patlakh and plaintiffs thereafter signed a lease for the property. Patlakh then formed a corporation, VGM Corporation, and applied for a second use permit on September 4, 1990--this time in VGM's name. In the application, Patlakh represented that his establishment would house "billiards (25), indoor baseball[,] hockey, [and a] snack bar." Phillips issued a use permit to VGM on September 11, 1990, describing the authorized use as a "sport club" for "billiards; indoor baseball; hockey; [and] snack bar."
 
 
 7
 In preparation for the opening, Patlakh modified the property. The modifications required construction for which the Township issued a building permit. The Township's fire marshal and plumbing inspector inspected the property and voiced their approval of Patlakh's work. The Township's health inspector did not grant approval and required Patlakh to make additional structural modifications. Patlakh did not complete the work until after the use permit was revoked. The health inspector never approved the work.
 
 B.
 
 8
 Under Pennsylvania's Health and Safety Code, every alteration of a building or structure must be inspected and approved before use or occupancy of the building. Pa.Stat.Ann. tit. 35, § 1229 (1977). Without such inspection and approval, no certificate of occupancy may issue. Id. These provisions of the Code are reflected in the Township's zoning ordinance. Under the Ordinance, a use permit holder must notify the zoning officer that all building work is complete, and the zoning officer must certify and approve the completion before the property can be occupied or used under the use permit. Ordinance § 1602. Patlakh did not notify Phillips that the work was complete, and Phillips never certified such completion. Under the terms of the Ordinance, Patlakh's and VGM's use permit was not "complete or permanently effective," see id., without Phillips's approval of the structural-modification work.[2] In short, Patlakh could not lawfully operate his club at the time the use permit was revoked.
 
 
 9
 In January 1990, Patlakh advertised the opening of a "Billiard Sports Club" in newspapers and leaflets. The leaflets advertised "Delaware County's Largest Billiard Club," open twenty-four hours a day, seven days a week. The advertisements listed "25 Pool Tables" and "Pin Ball Machines" as the club's main attractions. In fact, Patlakh had twenty-five pool tables, one pinball machine, one video game, a compact-disc jukebox, and a foosball table on the property. Patlakh had no indoor baseball, hockey, golf, or basketball facilities.
 
 
 10
 On January 8, 1991, Patlakh opened his club before completing the structural modifications ordered by the Township's health inspector, before all of his equipment was in place, and without a fully effective use permit or a certificate of occupancy. Township police shut it down the same day. Zoning Officer Phillips thereafter revoked the use permit. In letters to Patlakh, VGM, and plaintiffs dated January 11, 1991, Phillips explained that he had revoked the permit "because these permit[ ] were issued erroneously based on false and misleading application [sic]."[3] The Ordinance requires that an applicant provide "all information necessary to the zoning officer to ascertain whether the proposed ... use or change in use complied with the provisions of this Ordinance." Ordinance *1289s 1601. If an applicant violates the Ordinance by supplying false or misleading information or by failing to secure inspection or approval of structural modifications, the zoning officer is permitted to "take any enforcement action, whether by legal process or otherwise," to address the violation and "to prevent the occupancy of [the] building." Ordinance § 1603. It would appear, therefore, that Phillips had authority, under the Township's zoning ordinance, to revoke a use permit of an applicant who supplied false or misleading information in its application.
 
 
 11
 Plaintiffs did not reapply for a use permit, appeal the revocation to the Township Zoning Board, or seek a variance or special exception to the Township's zoning ordinances. Each of these options was available to plaintiffs under the Township's zoning ordinance and Pennsylvania's Municipal Planning Code. The zoning hearing board has exclusive jurisdiction to render a "final adjudication" regarding any decision of the zoning officer, such as revocation of a use permit. Pa.Stat.Ann. tit. 53, § 10909.1(a)(3).[4] The zoning hearing board also has exclusive jurisdiction to grant variances and special exceptions to the zoning ordinance. Ordinance § 1600; see also Pa.Stat.Ann. tit. 53, §§ 10910.2 & 10912.1. The zoning hearing board would have been required to hold a hearing on plaintiffs' appeal or request for a variance or special exception within sixty days of filing and to render a decision within forty-five days of the hearing. Pa.Stat.Ann. tit. 53, § 10908(1.2). Failure to take action on plaintiffs' request for relief would have resulted in deemed approval of the request. Pa.Stat.Ann. tit. 53, § 10908(9).
 
 
 12
 Instead of taking one of these actions, plaintiffs filed this civil rights action in the United States District Court for the Eastern District of Pennsylvania under 42 U.S.C. § 1983. Plaintiffs claimed that they were deprived of property without due process of law, that defendants's actions were arbitrary and capricious, and that defendants denied them equal protection of the law. Plaintiffs also filed a pendent state claim, alleging intentional interference of business relations with Patlakh and VGM.[5]
 
 
 13
 Several allegations, which we accept as true for the purposes of this appeal, are central to plaintiffs' claims. Plaintiffs assert that Phillips knew Patlakh intended to operate twenty-five pool tables at the property and believed that such use continued the nonconforming use of the previous occupant. Plaintiffs allege that community members exerted politically- and racially-motivated pressure on the defendants to block the opening of the sports club. Plaintiffs also allege that Township officials succumbed to this pressure, decided to revoke the permit, and forced Phillips to send the revocation letter.
 
 
 14
 Defendants moved for summary judgment. After discovery and a hearing, the district court granted the motion, holding that plaintiffs' claims were not ripe for judicial review.
 
 II.
 A.
 
 15
 The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3). We have jurisdiction under 28 U.S.C. § 1291.
 
 
 16
 Our review of the district court's judgment on the basis of ripeness is plenary. Felmeister v. Office of Attorney Ethics, 856 F.2d 529, 535 n. 8 (3d Cir.1988).
 
 B.
 
 17
 We recognize "[t]here is some disagreement among courts and commentators as to whether the ripeness doctrine is grounded in the case or controversy requirement or is better characterized as a prudential limitation on federal jurisdiction." Armstrong World Indus. v. Adams, 961 F.2d 405, 411 n. 12 (3d Cir.1992).[6] Regardless, ripeness is "peculiarly a question of timing." Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985). "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Lab. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).
 
 
 18
 Because ripeness affects justiciability, we believe that unripe claims should ordinarily be disposed of on a motion to dismiss, not summary judgment.[7] Some courts of appeals--confronted with premature claims on review of a grant of summary judgment--have vacated the district court's judgment and remanded with instructions to dismiss. See Southern Pacific Transportation Co. v. City of Los Angeles, 922 F.2d 498, 508 (9th Cir.1990). We adopt that view.
 
 III.
 
 19
 Plaintiffs challenge the revocation of Patlakh's use permit under the Fourteenth Amendment, alleging violations of substantive due process, procedural due process, and equal protection.[8] To prevail on substantive and procedural due process claims,[9] plaintiffs must have been deprived of a property interest because of either arbitrary and capricious government action or a denial of fair legal process. See generally Reich v. Beharry, 883 F.2d 239, 242-43 (3d Cir.1989). Plaintiffs claim they have a protected property interest in the use permit sufficient to implicate due process. We assume, without deciding, that this is the case.
 
 IV.
 
 20
 Plaintiffs brought constitutional challenges to a land-use decision under 42 U.S.C. § 1983. The Supreme Court has held that such challenges are not ripe unless plaintiff has given local land-planning authorities the opportunity to render a final decision on the nature and extent of the impact of the zoning ordinances on plaintiff's property. See Williamson Planning Comm. v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985);[10] see also MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285, reh'g denied, 478 U.S. 1035, 107 S.Ct. 22, 92 L.Ed.2d 773 (1986).
 
 
 21
 In Williamson, a local planning commission rejected plaintiff's development plat by applying new regulations retroactively after having twice approved the plat under prior regulations. 473 U.S. at 177-82, 105 S.Ct. at 3111-14. Plaintiff brought suit, alleging an unconstitutional taking under the Fifth Amendment because the commission had denied all economically viable uses of the property. Id. at 185, 105 S.Ct. at 3115-16. In the alternative, plaintiff claimed a due process violation because the commission effectively sought to deprive plaintiff of its property without instituting eminent domain proceedings under state law. Id. The Supreme Court held that, under either theory, plaintiff's claim was premature because it had neither sought a variance from the new regulations nor pursued compensation through appropriate state procedures. Id. at 193-94, 105 S.Ct. at 3120-21.
 
 
 22
 In MacDonald, the Court again addressed ripeness of constitutional claims arising from local zoning disputes. There, plaintiff's subdivision plan was rejected by a local planning commission and, on appeal, by the county board of supervisors. 477 U.S. at 342, 106 S.Ct. at 2562-63. Plaintiff thereafter sued in federal court, claiming that the commission had taken its property without just compensation. The MacDonald Court found plaintiff's claim premature because, even though it had appealed the rejection of the plan, plaintiff had not submitted less intensive development plans with the planning commission. Id. at 351-52, 106 S.Ct. at 2567-68. Plaintiff's failure to submit such plans "le[ft] open the possibility that some development will be permitted...." Id. at 352, 106 S.Ct. at 2568. Without a final adjudication of the uses to which plaintiff could put its property, the Court refused to hear plaintiff's constitutional challenge.
 
 
 23
 In the context of land-use decisions, Williamson and MacDonald require state zoning authorities be given an opportunity to "arrive[ ] at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question" before its owner has a ripe constitutional challenge based on the disputed decision. Williamson, 473 U.S. at 191, 105 S.Ct. at 3119. This finality rule recognizes that, with respect to zoning disputes, a property owner suffers no mature constitutional injury until the zoning authority defines the application of the zoning ordinance and defines the harm to the owner. The finality rule also prevents the premature adjudication of zoning disputes. As the Court of Appeals for the Eleventh Circuit explained, "zoning is a delicate area where a county's power should not be usurped without giving the county an opportunity to consider concrete facts on the merits prior to a court suit." Eide v. Sarasota County, 908 F.2d 716, 726 n. 17 (11th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991); see also Hoehne v. County of San Benito, 870 F.2d 529, 532 (9th Cir.1989) (with Williamson and MacDonald, the Supreme Court "erected imposing barriers ... to guard against the federal courts becoming the Grand Mufti of local zoning boards"). This court itself has observed that "land-use regulation generally affects a broad spectrum of persons and social interests, and ... local political bodies are better able than federal courts to assess the benefits and burdens of such legislation." Rogin v. Bensalem Tp., 616 F.2d 680, 698 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).
 
 
 24
 Although strong policy considerations favor local resolution of land-use disputes, neither Williamson nor MacDonald explained whether the finality rule applies to challenges to land-use decisions under any constitutional theory or only takings-type claims. The parties have asked us to determine the scope of the finality rule. Plaintiffs contend it applies only to "takings" claims and ask us to overturn Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667 (3d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992)--a step we are clearly unable to take. See Landano v. United States Dep't of Justice, 956 F.2d 422, 434 (3d Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 197, 121 L.Ed.2d 139 (1992). Defendants contend the finality rule applies regardless of the theory on which plaintiffs attack a land-use decision--even where the attack is premised on substantive due process, procedural due process, and equal protection. We believe the finality rule applies to each of plaintiffs' claims.
 
 A.
 
 25
 To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest. See Landmark Land Co. of Oklahoma, Inc. v. Buchanan, 874 F.2d 717, 722 (10th Cir.1989); Moore v. Warwick Pub. Sch. Dist., 794 F.2d 322, 329 (8th Cir.1986). Plaintiffs claim Phillips's actions were arbitrary and capricious and deprived them of a property interest in the use permit. Before we can determine whether the Zoning Officer's application of the ordinance is arbitrary and capricious, the Township must be given an opportunity to finally determine how it will interpret and apply those laws. Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 686 (3d Cir.1991).
 
 
 26
 In Midnight Sessions, the owners of an all-night club ("Down South") filed suit under 42 U.S.C. § 1983 claiming, inter alia, the City of Philadelphia violated their rights to substantive due process of law. 945 F.2d at 670. As the basis for their claim, the owners alleged the City had enforced building and fire regulations in an arbitrary and irrational way. The City had cited Down South for failing to post conspicuously a sign indicating maximum occupancy and to recharge fire extinguishers. Id. at 672. Because of these citations, the City denied Down South's request for a certificate of occupancy. Id. at 673.
 
 
 27
 Relying on Williamson, we dismissed the owners' substantive due process claim on ripeness grounds. Id. at 686. We explained that:
 
 
 28
 Down South did not appeal to the Review Board the citations for violations it received from [the City's Department of Licenses and Inspection] nor the denial of its certificate of occupancy. This failure to appeal precludes "final administrative action" by the City and, therefore, these claims were premature and should have been dismissed on summary judgment.
 
 
 29
 Id. (emphasis added).
 
 
 30
 Applying the finality rule, we find plaintiffs' substantive due process claim is not yet ripe for adjudication. Although plaintiffs allege Phillips's actions were arbitrary and capricious and deprived them of a property interest in the use permit, the Township has rendered no final decision regarding the revocation of the permit.
 
 
 31
 Plaintiffs claim Phillips revoked Patlakh's use permit under the pretext that Patlakh had included false and misleading information on his use-permit application. Plaintiffs contend Phillips knew of the intended use of the property, believed the use was consistent with the nonconforming-use of the prior tenant, but revoked the permit on orders from other Township officials. Even assuming these allegations are true, Phillips's revocation was not a final revocation of the permit.
 
 
 32
 Under Pennsylvania's Municipal Planning Code, Phillips must administer the Township's zoning ordinance in the first instance. See Pa.Stat.Ann. tit. 53, § 10614; see also Rogin v. Bensalem Tp., 616 F.2d at 694 (zoning officer has "inflexible ministerial" duty to apply zoning regulations as he or she understands them). Any action by Phillips, however, did not represent the Township's final interpretation or application of the zoning ordinance. See Rogin, 616 F.2d at 694-95. Only the zoning hearing board's determination is a "final adjudication" under the terms of the Code. Pa.Stat.Ann. tit. 53, § 10909.1(a).[11] The zoning hearing board has exclusive authority to determine whether Phillips failed to follow prescribed procedures or misinterpreted or misapplied any provision of the Township's ordinance.[12] See Pa.Stat.Ann. tit. 53, *1293s 10909.1. The Ordinance requires no deference by the zoning hearing board to Phillips's decision, and the zoning hearing board would have been free to consider the facts and circumstances of Patlakh's application anew. See id.
 
 
 33
 Only the zoning hearing board could definitively and finally revoke use permits under the Township's ordinance. If plaintiffs had filed for relief with the zoning hearing board, the board could have determined that Patlakh's application was not false or misleading and that his use of the property as a pool hall constituted a continuation of the previous nonconforming use.[13] Under Williamson and MacDonald, the zoning hearing board must make that determination before plaintiffs' substantive due process claim is ripe. Only then will it be clear whether the Township has acted in an arbitrary and capricious manner. See Eide v. Sarasota County, 908 F.2d 716, 725 n. 16 (11th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991).
 
 B.
 
 34
 Plaintiffs also characterized the revocation of their use permit as "a deprivation of [a] property interest without due process of law in violation of the Fourteenth Amendment to the Constitution." To prevail on a procedural due process claim, plaintiffs must demonstrate the Township deprived them of a protected property interest and state procedures for challenging that deprivation do not comport with due process of law. See, e.g., Layton v. Beyer, 953 F.2d 839 (3d Cir.1992). Central to the Supreme Court's reasoning in Williamson is the notion that local zoning authorities must fully and finally determine whether, and to what extent, a deprivation has occurred before a federal claim is mature. 473 U.S. at 200, 105 S.Ct. at 3123-24.
 
 
 35
 In Williamson, the Court held the plaintiff's claim was premature "whether it is analyzed as a deprivation of property without due process of law under the Fourteenth Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment." Id. The Court specifically considered the argument that, in rejecting plaintiff's development plat, the planning commission violated plaintiff's due process rights by failing to proceed under the state's eminent domain procedures. Id. at 197-99, 105 S.Ct. at 3122-23. In other words, the Williamson plaintiff stated a procedural due process claim.[14] The Williamson Court refused to consider the merits of this claim because plaintiff failed to apply for a variance before initiating its federal lawsuit. Id. at 199-200, 105 S.Ct. at 3123-24.
 
 
 36
 Other federal courts of appeals have regularly applied Williamson's finality rule to procedural due process claims. In Bigelow v. Michigan Department of Natural Resources, the court held that a procedural due process claim, based on an allegation of no hearing before a deprivation of a property interest, is subject to the finality rule. 970 F.2d 154, 159-60 (6th Cir.1992).[15] Similarly, in Herrington v. Sonoma County, the court held that Williamson applied to all procedural due process claims that challenge "the process by which officials reach land-use decisions." 857 F.2d 567, 569 n. 1 (9th Cir.1988), cert. denied, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989).
 
 
 37
 Plaintiffs contend the finality rule does not apply to a due process deprivation that, in itself, causes injury and that, because Phillips strayed from established procedure in revoking their permit, they have suffered a mature constitutional injury. In Williamson and MacDonald, however, the Supreme Court did not ignore the fact that certain land-use decisions may cause injury. Rather, in the face of potential constitutional injuries, the Court held the local authorities should be given the opportunity to fully and finally determine the scope of the injury before federal claims ripen. Local zoning authorities are flexible institutions, according to the Court, that may "give back with one hand what they have taken with the other."[16] MacDonald, 477 U.S. at 350, 106 S.Ct. at 2566. Any deprivation suffered by plaintiff's tenant as a result of the revocation of the use permit could have been quickly remedied by the zoning hearing board under the applicable legislative scheme, a scheme we have held to be consistent with due process.[17] See Rogin v. Bensalem Tp., 616 F.2d at 695. Although plaintiffs may, at some point, have a mature and colorable claim because of the Township's actions[18]--assuming they had a property interest in the permit at all--Williamson and MacDonald require that plaintiffs allow local authorities to act with finality under the zoning ordinance before pursuing a due process claim.
 
 C.
 
 38
 Plaintiffs alleged defendants revoked Patlakh's permit based on improper racial and political motivations in violation of the equal protection clause of the Fourteenth Amendment. Plaintiffs are not members of a suspect or quasi-suspect class nor do they claim that the Township's action has burdened a fundamental right. In the absence of a suspect class or fundamental right, plaintiffs' equal protection claim merits no heightened scrutiny. See Lyng v. Castillo, 477 U.S. 635, 638-39, 106 S.Ct. 2727, 2729-30, 91 L.Ed.2d 527 (1986). Therefore, like their substantive due process claim, plaintiffs can prevail on equal protection claim only if the Township's actions were not rationally related to a legitimate purpose. See Rogin v. Bensalem Tp., 616 F.2d 680, 687 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). In these circumstances, where no suspect classification is alleged and no fundamental right infringed, we believe that a plaintiff's equal protection claim is not ripe under Williamson until the zoning authority has taken final action. See Unity Ventures v. Lake County, 841 F.2d 770, 775 n. 2 (7th Cir.), cert. denied, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); see also Pennell v. City of San Jose, 485 U.S. 1, 11 n. 5, 108 S.Ct. 849, 857 n. 11, 99 L.Ed.2d 1 (1988) (equal protection claim based on rent control ordinance premature because regulatory authority rendered no decision regarding application of ordinance to plaintiff's property).
 
 
 39
 Until the Township has fully and finally considered how a specific landowner is treated under the zoning scheme, a federal court cannot determine whether the landowner has been dissimilarly treated nor whether such treatment is rationally related to a legitimate government purpose. Accord Bigelow, 970 F.2d at 158; Landmark Land Co. of Oklahoma v. Buchanan, 874 F.2d 717, 722 (10th Cir.1989); Herrington v. County of Sonoma, 857 F.2d 567, 569 (9th Cir.1988), cert. denied, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989). Like a takings claim, the injury--dissimilar and irrational treatment--ripens only after the zoning hearing board takes final and definitive action through its variance or review procedures. Because plaintiffs resorted to neither, their equal protection claim is not ripe for judicial review.
 
 V.
 
 40
 For these reasons, we will vacate the judgment of the district court and remand with instructions to dismiss.
 
 SUR PETITION FOR REHEARING
 
 41
 March 16, 1993.
 
 
 42
 Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH and LEWIS, Circuit Judges.
 
 
 43
 The petition for rehearing filed by appellants in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular service not having voted for rehearing, the petition for rehearing by the panel and the Court in banc, is denied.
 
 
 
 [1]
 Mayor Ward died after plaintiffs filed this action
 
 
 [2]
 The Ordinance provides, in part,
 [u]pon completion of the erection or alteration of any building or portion thereof authorized by any permit, and prior to occupancy or use, the holder of such permit shall notify the Zoning Officer of such completion. No permit shall be considered complete or permanently effective until the Zoning Officer has certified that the work has been inspected and approved as being in conformity with the provisions of the Ordinance and other applicable ordinances.
 Ordinance, § 1602.
 
 
 [3]
 Plaintiffs allege that Phillips did not revoke the permit. Rather, plaintiffs allege that the individual defendants decided to revoke the permit collectively and that Phillips merely issued the revocation letter. Regardless of Phillips' motivation for sending the revocation letter, the record clearly indicates that the use permit was officially revoked by the letter, which Zoning Officer Phillips sent to Patlakh, VGM, and plaintiffs
 
 
 [4]
 § 10909.1(a) provides, in part, "[t]he zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in ... [a]ppeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit...." Pa.Stat.Ann. tit. 53, § 10909.1(a)
 
 
 [5]
 Plaintiffs do not contest the district court's dismissal of their pendent claim
 
 
 [6]
 We noted in Armstrong that even the Supreme Court has referred to ripeness as both a constitutional and prudential doctrine. 961 F.2d at 411 n. 12 (citing Thomas v. Union Carbide Agric. Prods Co., 473 U.S. 568, 579-82, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (constitutional doctrine); Buckley v. Valeo, 424 U.S. 1, 117-18, 96 S.Ct. 612, 681-82, 46 L.Ed.2d 659 (per curiam) (prudential doctrine)). We concluded that even if "the ripeness doctrine has a prudential component, it seems clear that it is at least partially grounded in the case or controversy requirement" of Article III. Id.; see generally Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3532.1 (1984)
 
 
 [7]
 We note, however, that the district court is not limited to the face of the pleadings in deciding such a motion. As long as the parties are given an adequate opportunity to address the justiciability of the claim, the district court " 'may inquire, by affidavits or otherwise, into facts as they exist.' " Armstrong, 961 F.2d at 410 n. 10 (quoting Land v. Dollar, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947))
 
 
 [8]
 The Fourteenth Amendment to the Constitution provides, in pertinent part, that "[n]o state ... shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law." U.S. Const., amend. XIV, § 1
 
 
 [9]
 Plaintiffs also challenge the Township's action under the Fourteenth Amendment's Equal Protection Clause. We consider this challenge in part IV, infra
 
 
 [10]
 Relying on Patsy v. Florida Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), plaintiffs contend that they should not be required to exhaust state administrative remedies before bringing claims under § 1983. We agree that exhaustion of remedies in not a prerequisite to claims under § 1983; however--as the Supreme Court held in Williamson--"[t]he question whether administrative remedies must be exhausted is conceptually distinct ... from the question whether an administrative action must be final before it is judicially reviewable." 473 U.S. at 192, 105 S.Ct. at 3119. The Williamson Court explained
 While the policies underlying the two concepts overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.
 Id. at 193, 105 S.Ct. at 3120.
 
 
 [11]
 As we have set forth, § 10909.1(a) provides "[t]he zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in ... [a]ppeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit...." Pa.Stat.Ann. tit. 53, § 10909.1(a)
 
 
 [12]
 Of course, an aggrieved party may appeal for judicial review. 53 Pa.Stat.Ann. §§ 11001-A et seq. A claim is "final," however, after the zoning hearing board has rendered a decision. Finality does not require state court review of the board's decision
 
 
 [13]
 As we stated earlier, the zoning hearing board would have been required to hold a hearing on any request for relief within sixty days of the request and to issue a decision within forty-five days of the hearing. See Pa.Stat.Ann. tit. 53, § 10908(1.2). We believe this time period is not unduly burdensome. This is especially true where, as here, plaintiff had no occupancy permit and could not have legally opened for business at the time the Township revoked the use permit
 
 
 [14]
 We note that, although this claim has often been deemed a regulatory takings claim under the Fourteenth Amendment, it is not a takings claim "in the literal Fifth Amendment sense, but is a metaphor for actions having the same effect as a taking by eminent domain." 473 U.S. at 198, 105 S.Ct. at 2123. Therefore, the claim in Williamson, like plaintiffs' claim here, was a procedural due process claim
 
 
 [15]
 Plaintiffs' reliance on Nasierowski Bros. Inv. v. City of Sterling Heights, 949 F.2d 890 (6th Cir.1991), is misplaced. In Nasierowski, the Court of Appeals for the Sixth Circuit held the finality rule does not apply to facial challenges to a zoning ordinance. 949 F.2d at 894-95. Plaintiffs in this case have not made a facial challenge to Upper Darby's zoning ordinance. Rather, plaintiffs contend that Phillips engaged in improper conduct in exercising his authority under those ordinances. As demonstrated by Bigelow, plaintiffs' "as applied" challenge is subject to the finality rule even under the Sixth Circuit authority. See 970 F.2d at 159-60 (Williamson governed "as applied" challenge under due process clause)
 
 
 [16]
 We agree with the Court of Appeals for the Ninth Circuit that the flexibility inherent in local zoning systems "is obviously useless if the property owners abandon their applications after rejection by civil servants with narrow authority and before seeking relief from a body with broader powers." Southern Pacific v. City of Los Angeles, 922 F.2d 498, 503 n. 5 (9th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991)
 
 
 [17]
 Under that scheme, the zoning officer determines whether the use proposed by the property owner is in conformity with the zoning and other applicable ordinances and, in effect, makes a recommended finding. That recommended finding then provides the basis for a de novo hearing before the zoning hearing board at which the owner has a chance to be heard and present evidence. Only thereafter is a final decision made as to whether the proposed use complies with the applicable criteria
 
 
 [18]
 We note the revocation of the use permit had no immediate impact on Patlakh's business operations. Patlakh could not have legally operated his business even if the use permit had not been revoked because he had secured no final approval of the structural modifications to the property and had no certificate of occupancy. By the terms of the Ordinance, plaintiffs' permit was neither complete nor permanently effective without such approval. Ordinance § 1602