NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1036

LONG LANE LIMITED PARTNERSHIP,

Appellant,

v.

DAVID L. BIBB, Acting Administrator, General Services Administration,

Appellee.

_____

DECIDED:  December 7, 2005

_____

Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge, and PROST, Circuit Judge.

PER CURIAM.

Long Lane Limited Partnership appeals from the decision of the General Services Administration ("GSA") Board of Contract Appeals granting summary relief in favor of GSA in Long Lane's claim that GSA improperly terminated its lease of property from Long Lane.  Long Lane L.P. v. Gen. Servs. Admin., GSBCA No. 15334, Slip op. at 4 (June 3, 2004) ("Initial Decision").  Because Long Lane failed to proffer evidence reasonably demonstrating that GSA terminated its lease in bad faith, the Board did not err in dismissing Long Lane's appeal.  We therefore affirm.

BACKGROUND

On January 22, 1990, Long Lane Limited Partnership, owned in part by Jim Duffy ("Duffy"), entered into a lease agreement with GSA for approximately 5,830 square feet of office space located in 67 Long Lane, Upper Darby, Pennsylvania ("67 Long Lane building"). The tenant was a Social Security Administration ("SSA") regional office. Although the term of the lease was for ten years, GSA had the right to terminate the lease at any time after five years "by giving at least 90 days' notice in writing to the Lessor." Initial Decision, slip op. at 2. In a letter dated October 22, 1996, the government purportedly gave notice that it was terminating the lease in 90 days. On or about January 20, 1997, almost seven years into the term of the lease, GSA did terminate the lease and SSA presumably left the premises.

Upon terminating the lease, GSA moved SSA to a building located southwest of the 67 Long Lane building. The new office space was procured through a Solicitation for Offers dated January 17, 1995 ("1995 Solicitation"), while SSA was still a tenant in the 67 Long Lane building. In the solicitation, GSA sought to lease office space that was between 5,700 to 6,000 square feet in size. It also specified a narrow geographical area of consideration for the new office space, with the southernmost boundary being, according to Long Lane, "mere feet" away from the 67 Long Lane building.[1] Long Lane also alleges that, even though it was the incumbent contractor, it received no information regarding the 1995 Solicitation until after a contract was awarded.

Approximately one month after SSA began occupying the 67 Long Lane building, GSA awarded Taylor Investments Ltd., another Duffy-owned entity, a contract to lease

---

[1] Long Lane notes that the new office space GSA eventually leased was not within the boundaries set forth in the 1995 Solicitation.

05-1036                                    -2-

office space in 3 South State Road, Upper Darby, for a SSA telecommunications office. In another portion of that building, Taylor Investments contracted with another tenant to lease space for use as a pool hall. The Upper Darby Township, however, allegedly tried to prevent the pool hall from operating by revoking the tenant's building and use permits. In response to the permit revocations, Taylor Investments and the tenant filed a civil rights action claiming that they were being deprived of property without due process of law and that they were denied equal protection of the law.[2] Relevant to this appeal, Long Lane alleges that in retaliation for the legal actions that Duffy took in connection with the 3 South State Road property, "local political operatives" threatened Duffy that he would lose federal business because of those actions. Appellant's Opening Br., at p.6.

Before the Board, Long Lane argued that GSA breached the implied covenant of fair dealing and good faith in the 67 Long Lane building lease by conspiring with SSA to punish Duffy for pursing a legal action against the township. Initial Decision, slip op. at 1-2. Long Lane attributed the following GSA acts to the conspiracy: (1) terminating the 67 Long Lane lease; (2) procuring office space of similar size for the same tenants in the new property; and (3) purposely drawing the geographical area of consideration for the new office space so that the 67 Long Lane building was just outside of that area and thus Long Lane was unable to compete for the follow-on contract. Id. In granting summary relief in favor of GSA, the Board held that, after a three-year discovery period, Long Lane failed to provide evidence reasonably suggesting that GSA terminated the

---

[2] In Taylor Investments, Ltd. v. Upper Darby Township, 983 F.2d 1285 (3rd Cir. 1993), the Third Circuit dismissed those claims on the ground that they were not ripe for judicial review. The court held that Taylor Investments did not exhaust all available remedies under the local zoning laws.

lease in bad faith.  Id., slip op. at 4.  According to the Board, Long Lane's proffered evidence "amount[ed] to nothing more than appellant's speculation, which, at this stage of the proceedings, is not sufficient to maintain the appeal."  Id.

Long Lane's motion for reconsideration was denied as simply repeating arguments that were previously rejected by the Board.  Long Lane L.P. v. Gen. Servs. Admin., GSBCA No. 15334-R, slip op. at 3-4 (Sept. 3, 2004) ("Reh'g Decision").  Long Lane timely appealed to this court.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).

DISCUSSION

We review the Board's determination on a question of law de novo.  Wickham Contracting Co. v. Fischer, 12 F.3d 1574, 1577 (Fed. Cir. 1994).  We will not, however, disturb the Board's decision on a question of fact "unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence."  41 U.S.C. § 609(b) (2000).

On appeal, Long Lane assigns error to what it argues is the Board's requirement that it produce evidence directly proving that GSA had a bad-faith motivation in terminating the 67 Long Lane building lease.  Long Lane argues that certain actions taken by GSA provided sufficient circumstantial evidence allowing the Board to infer that GSA acted in bad faith, thereby sustaining its appeal.  According to Long Lane, GSA's bad faith "emanates" from a willful and intentional desire to terminate the Long Lane lease solely to injure it, not for legitimate business needs.  Long Lane points to the following actions as support for its claim of bad faith:  (1) GSA's termination of the lease; (2) GSA's failure to notify Long Lane of its 1995 Solicitation until after the contract had

been awarded, thus preventing Long Lane from bidding and filing a timely bid protest; and (3) the 1995 Solicitation, which sought the same amount of office space that SSA had in the 67 Long Lane building, where the area of geographical consideration for the new space was curiously specified so that the 67 Long Lane building was excluded from consideration by "mere feet."

Additionally, Long Lane contends that if it did not meet the evidentiary hurdle necessary to avoid summary relief, it was because of the government's litigation tactics. According to Long Lane, on repeated occasions it asked for and was refused access to documents relating to GSA's decision to terminate the 67 Long Lane building lease and procure a new office space. Long Lane also expresses frustration with a GSA contracting officer who it deposed, Jim Snyder, for his lack of knowledge or recollection regarding the facts surrounding the termination of the lease, which he was unquestionably in charge of. At bottom, Long Lane argues that it should not be punished for the government's failure to provide meaningful discovery, and that we should instead draw a negative inference as to GSA's intent in terminating the lease.

In its response, the government maintains that Long Lane has not met the high evidentiary standard needed to prove that GSA acted in bad faith. The government notes that Long Lane's "evidence" consisted only of Duffy's uncorroborated affidavit, statements from Snyder's deposition, its response to interrogatories, and copies of Long Lane's lease and the 1995 Solicitation. Regarding the affidavit, the government cites Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1240-43 (Fed. Cir. 2002), to argue that an uncorroborated affidavit alone cannot meet the "clear and convincing" evidentiary standard needed to prove bad faith. The government also

downplays the significance of Snyder's deposition testimony because it was taken almost five years after he left government service. Moreover, the government cites portions of Snyder's testimony where he provides good faith reasons why GSA may have terminated the lease, e.g., transportation, parking, clientele, and handicapped accessibility. Finally, regarding the 1995 Solicitation, the government explains that it was within GSA's protocol to publicize a Solicitation for Offers in a newspaper, as opposed to mailing the solicitation directly to an incumbent contractor.

The government also disputes Long Lane's allegation that it withheld relevant discovery. On the contrary, according to the government, it produced numerous relevant documents in its possession. The government also asserts that there were no documents in GSA's possession regarding any failure to notify any prospective bidders individually of the 1995 Solicitation. Nonetheless, if Long Lane still believed that there were documents that should have been produced, the government contends that Long Lane should have filed a motion to compel, which it did not do. The government also argues that any lack of discovery is attributable to Long Lane because it was not diligent in seeking further discovery. For example, the government points to Long Lane's alleged failure to seek further discovery for almost the entire year before the discovery period ended.

After considering Long Lane's proffered evidence in a light most favorable to Long Lane, we agree with the Board that Long Lane has failed to provide sufficient evidence to support its claim that GSA terminated the 67 Long Lane building lease in bad faith. As an initial matter, neither party disputes the Board's determination that GSA had a duty to act in good faith in dealing with Long Lane. Initial Decision, slip op.

at 2. As the Board also recognized, however, the government is always presumed to act in good faith, and "it requires 'well-nigh irrefragable proof' to induce the court to abandon the presumption of good faith dealing." Id., slip op. at 2; Torncello v. United States, 681 F.2d 756, 770 (Cl. Ct. 1982) (citations omitted). Moreover, as we have explained, the standard for demonstrating "well-nigh irrefragable proof" is high, as it refers to "evidence that 'cannot be refuted or disproved.'" Am-Pro Protective, 281 F.3d at 1240.

To begin with, GSA had the contractual right to terminate the lease when it did. Regarding Long Lane's assertion of bad faith, it has not produced any evidence, other than Duffy's uncorroborated, speculative statements, to support its theory as to why GSA's termination of the lease was in bad faith. Its claim of retaliation for Duffy's prior legal action against the township is merely uncorroborated speculation. Long Lane has not provided any evidence linking the "local political operatives" that allegedly threatened Duffy to either GSA or SSA, much less that they were in any position to influence GSA's leasing decisions. Reh'g Decision, slip op. at 4. Without a credible motivation for doing so, we are hard pressed to infer that GSA acted in bad faith based only upon Long Lane's speculation.

However, even if we were to accept Long Lane's suspicion of GSA's motivation, we still cannot say the Board erred in holding that Long Lane did not meet its burden of supplying "clear and convincing" proof of bad faith. See Am-Pro Protective, 281 F.3d at 1239-40 (equating "well-nigh irrefragable proof" with the "clear and convincing" standard of proof). Long Lane's "evidence" is hardly persuasive, much less "clear and convincing." As the Board observed, much of Long Lane's "evidence," viz., its

conspiracy theory concerning "local political operatives" and the reasons why it was not contacted regarding the 1995 Solicitation, is uncorroborated, and thus amounts to speculation. Moreover, we agree with the government that under Am-Pro Protective, Duffy's uncorroborated affidavit and interrogatory responses cannot be used to meet the "clear and convincing" standard that is required to prove GSA's alleged bad faith.

We conclude that there is no real evidence to support Long Lane's allegations of bad faith sufficient to withstand the government's motion for summary relief. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (stating that summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Thus, we affirm the Board's decision granting summary relief in favor of the government.

We also reject Long Lane's position that the government unfairly denied it access to meaningful discovery, and thus that we should draw an adverse inference regarding the government's motivation in terminating the lease. To the extent that it believed the government was withholding relevant discovery, Long Lane could have filed a motion to compel discovery, which it does not purport to have done. Moreover, as this discovery issue has been raised for the first time on appeal, it does not provide a basis for reversal of the decision of the Board.

We have considered Long Lane's remaining arguments and find them not persuasive.

CONCLUSION

For the foregoing reasons, we affirm the Board's decision.