**PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4362
_____

CMR D.N. CORP. AND MARINA TOWERS LTD.,
t/a Waterfront Renaissance Associates, LLP,

Appellant

v.

THE CITY OF PHILADELPHIA; CITY COUNCIL OF THE
CITY OF PHILADELPHIA; PHILADELPHIA CITY
PLANNING COMMISSION; OLD CITY CIVIC
ASSOCIATION; RIVER'S EDGE CIVIC ASSOCIATION;
THE PENN'S LANDING NORTH CIVIC ASSOCIATION;
ANDREW SACKSTEDER; RICHARD HORROW; BRIAN
ABERNATHY; RICHARD THOM; ELIZABETH E.
WHITAKER; JOHN AND JANE DOES 1 THROUGH 10

_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
(No. 2:07-cv-01045)
District Judge: Honorable Lawrence F. Stengel
_____
Argued October 1, 2012

Before: FUENTES, FISHER and GREENBERG, *Circuit Judges*

(Opinion Filed: January 14, 2013)

Thomas A. Leonard, Esq. **[ARGUED]**
Richard P. Limburg, Esq.
H. David Seidman, Esq.
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kenney Blvd.
Philadelphia, PA 19103-1895

>    *Counsel for Appellant, CMR D.N. Corp. and Marina Towers Ltd., t/a Waterfront Renaissance Associates, LLP*

City of Philadelphia Law Department
Shelley R. Smith, Esq., City Solicitor
Jane Lovitch Istvan, Esq. **[ARGUED]**
1515 Arch Street, 17th Floor
Philadelphia, PA 19102-1595

>    *Counsel for Appellees, The City of Philadelphia, Brian Abernathy, Philadelphia City Planning Commission, and Philadelphia City Council*

---

OPINION OF THE COURT

---

FUENTES, <u>Circuit Judge</u>:

Waterfront Renaissance Associates, LLP ("Waterfront") owns a lot in the Delaware River waterfront neighborhood of Philadelphia, Pennsylvania. For almost twenty years, Waterfront pursued the development of a large commercial and residential real estate project on this lot. In 2006 the City of Philadelphia ("City") enacted an ordinance that extended certain construction restrictions from a nearby neighborhood to most lots within the area known as the Central Riverfront District, including Waterfront's property. Asserting that the construction height restriction imposed by the extension foreclosed its development plans, Waterfront sued.

In 2010, however, the City rescinded the application of the height restriction to Waterfront's property. The City then sought to dismiss Waterfront's constitutional claims based on the height restriction as moot, and moved for summary judgment on all other claims. Waterfront opposed these motions and, to avoid the mootness problem, sought leave to amend its complaint to challenge as unconstitutional a width restriction that had also been extended by the 2006 ordinance but had not been rescinded in 2010. Waterfront also sought to add a claim that an ordinance enacted in 2009, which had imposed additional requirements on construction along the Central Delaware River waterfront, was unconstitutional.

At issue in this appeal are the District Court's rulings on these motions. The District Court held that the rescission of the height restriction mooted Waterfront's federal constitutional claims against the 2006 ordinance, denied Waterfront's motion to further amend its complaint to attack the width restriction, and granted summary judgment for the

3

City on all other claims, including those based on the 2009 ordinance.

For the reasons that follow, we find no reason to disturb any of the District Court's rulings. We will, therefore, affirm the judgment of the District Court.

## I. Factual Background

### A. The Initial Stages of Waterfront's World Trade Center Project

The key facts relevant to this appeal are not in dispute. The origins of this protracted controversy can be traced to 1987, when Waterfront purchased a 5.3-acre lot (the "Site") to develop a high-rise project (the "Project") in the Central Riverfront District of Philadelphia, Pennsylvania. The Site is located at the southwest corner of Delaware Avenue (now known as Columbus Boulevard) and Noble Street.

Waterfront pursued the development of the Project over the next several years. In 1988, with the support of a recommendation letter from Philadelphia Mayor Wilson Goode, Waterfront obtained an exclusive license to develop its Project as a World Trade Center-type development. At the time of Waterfront's purchase, the Site was zoned G-2 industrial. Consequently, Waterfront worked with the Philadelphia City Planning Commission ("Planning Commission") to obtain rezoning of the Site. The Planning Commission is the Philadelphia agency empowered to propose zoning ordinances to the Philadelphia City Council ("City Council"), and is required by law to make recommendations to the Mayor for transmission to the City Council on any matters that may affect zoning. *See* 351 PA.

CODE §§ 4.4-601, 4.4-604 (Supp. 2012). The Planning Commission agreed to support Waterfront's request to rezone the Site C-4 commercial, a permissive designation that would allow Waterfront to build a mixed-use, high-rise project. In exchange, Waterfront agreed to enter into a series of restrictive zoning covenants with certain civic associations to govern any construction on the Site. In 1989, per the Planning Commission's recommendation, the City Council rezoned the Site C-4 commercial, and Waterfront subsequently entered into the required covenants.

Waterfront also explored ways to finance the World Trade Center Project, including forming a committee with the City and several business associations to analyze the Project's feasibility, and entering into a partnership with the Delaware River Port Authority to develop a plan for construction financed in part by the Port Authority.[1]

When financing for the project became a concrete possibility in early 2005, Waterfront obtained a permit from the City's Department of Licenses & Inspections, the agency with actual authority to issue building permits, *see* 351 PA. CODE § 5.5-1002 (the "Licensing Department"), that allowed demolishing existing structures on the Site and constructing a 28-story apartment tower upon the issuance of a building

---

[1] The Port Authority, a public organization wholly independent from the City, was created by an interstate compact between the Commonwealth of Pennsylvania and the State of New Jersey and is charged with maintaining and operating the Philadelphia-Camden port. *See* 36 PA. STAT. ANN. § 3503 (West 2012).

permit.[2]  Waterfront also entered into a financing agreement with a major bank, with a loan closing date of January 2006 and a construction start date of February 2006. Unfortunately, however, Waterfront had to postpone construction so it could rework the financing due to rising costs.

## B.  The March 2006 Ordinance

The loan scheduled to close in early 2006 was the closest Waterfront would get to the development of its Project.  On March 16, 2006, the City enacted a zoning ordinance (the "March 2006 Ordinance") that extended to certain areas of the Central Riverfront District, including Waterfront's Site, a zoning overlay known as the "Old City Residential Area Special District Controls" (the "Old City Overlay").  *See* R. 578.  The Old City Overlay included a building height restriction of 65 feet, as well as a width restriction of 70 feet.  *See* PHILADELPHIA, PA., ZONING CODE

---

[2] Waterfront states that it obtained an "as-of-right" zoning permit for a 26-story apartment tower in May of 2005 but cites to a permit in the record that relocated lot lines, and was issued in March of 2006.  *See* Appellant's Br. at 13 (citing R. 1372); *see also* R. 706 (Waterfront's counterstatement of facts in opposition to the City's motion for summary judgment incorrectly stating that the permit found at R. 1372 was issued on March 3, 2005).  The March 3, 2005 permit can be found at R. 571 but the record contains no permit issued in May of 2005.  Regardless, both the March 2005 and the March 2006 zoning permits required Waterfront to obtain an actual building permit before construction could begin.  *See* R. 571, 1372.

6

§ 14-1610(4), (5) (1990), *repealed by* Bill No. 110845 (Dec. 22, 2011); R. 159-61.[3]

Waterfront alleges that its Site was never intended to be included in the March 2006 Ordinance. It alleges that City Councilman Frank DiCicco, whose jurisdiction includes the Site, admitted to Waterfront's attorney that the inclusion of the Site in the area covered by the March 2006 Ordinance was a "mistake," R. 682, and that Philadelphia Mayor John Street stated that he would not have signed the legislation had he known that the 65-foot height restriction applied to the Site. The City disputes Waterfront's characterization of these statements. However, Waterfront asked Councilman DiCicco to repeal the inclusion of the Site from the extension of the Old City Overlay, but he refused. Moreover, Waterfront never applied for, or was denied, a permit under the March 2006 Ordinance, and it did not seek a variance.

## II.    Procedural History

### A.    Initial Stages of the Litigation

On February 23, 2007, Waterfront sued the City, the Planning Commission, the City Council, City Councilman aide Brian Abernathy, three civic associations with which it had entered into zoning covenants, and certain members of

---

[3] The parties cite the Philadelphia Zoning Code as it existed before it was repealed in 2011. We use the citation shorthand "FORMER PHILA. CODE" to refer to pre-repeal Zoning Code sections. Both old and new versions of the Code are available at http://www.amlegal.com/library/pa/philadelphia.shtml. We also cite to the parties' reproduction in the record of the relevant code provisions when they are provided.

7

those associations, in state court. The City removed the case to federal court on March 15, 2007.

An amended complaint, filed in 2008, alleges fourteen counts of constitutional and state law claims, focusing on the fact that the March 2006 Ordinance "impos[ed] a sixty-five foot (65') height restriction on [Waterfront's] Site." R. 87 (Compl. ¶ 5).[4] Counts I through VIII are directed at the City. Count I seeks a declaratory judgment, claiming that the March 2006 Ordinance is "defective" because the City "did not at any time discuss or consider the effect that extending the 65' height restriction would have on the public and private objectives established for the Site," and, therefore, the Site's inclusion within the ordinance was a "product of mistake" and "constitute[d] an instance of arbitrary and unreasonable zoning bearing no substantial relationship to the public health, safety, and welfare of the City and its inhabitants." R. 111-13 (Compl. ¶¶ 148-63). Count II seeks a declaratory judgment that the ordinance was "procedurally invalid" because "the newspaper advertising of the March 2006 Ordinance was insufficient to put [Waterfront] on notice" that the City planned to enact the ordinance. *Id.* ¶¶ 165-70. Counts III, IV, and VIII seek a variety of

---

[4] Citations to the Complaint in the record on appeal are to the Third Amended Complaint, which was filed after the District Court allowed Waterfront an opportunity to amend in March of 2011. *See infra* at Part II.C. However, the Third Amended Complaint is identical in all material respects to the provisions of the Amended Complaint described in Part II-A of this opinion. *See* Am. Compl., *CMR D.N. Corp. & Marina Towers Ltd. v. City of Philadelphia*, No. 2:07-cv-01045 (E.D. Pa. July 7, 2008), ECF No. 81.

remedies including injunctive relief and damages, based on state law claims of promissory estoppel, detrimental reliance, and unjust enrichment. *Id.* ¶¶ 172-85, 187-95, 212-21. Count V seeks a declaration that the "application of the [March 2006 Ordinance] to [Waterfront's] Site . . . deprives [Waterfront] of its constitutional right to substantive due process." *Id.* ¶ 201. Count VI seeks a declaration that "any application" of the March 2006 Ordinance "to [Waterfront's] Site" violates Waterfront's "constitutional right to equal protection" because the City had "arbitrarily treated [Waterfront's] Site differently from other similarly situated C-4 sites . . . ." *Id.* ¶¶ 203, 206. Count VII seeks monetary damages for the alleged violations of due process and equal protection. *Id.* ¶¶ 208-210.[5]

On March 31, 2008, the District Court dismissed the Planning Commission, the City Council, and Abernathy from the case. The District Court also dismissed Counts II and V. It reasoned that those counts constituted "as-applied" challenges to the height restriction because they attacked only the application of the ordinance to the Site. *Waterfront Renaissance Assocs. v. City of Philadelphia*, Civil Action No. 07-1045, 2008 WL 862705, at *6-8 n.15 (E.D. Pa. Mar. 31, 2008) ("*Waterfront I*"). Therefore, the Court concluded,

---

[5] Counts IX through XIV alleged various tort and contract claims against the civic associations, and certain of their individual members, that Waterfront sued. Most of these claims were dismissed at the pleadings stage, and the District Court later granted summary judgment on all remaining claims against those defendants. *See CMR D.N. Corp. v. City of Philadelphia*, 803 F. Supp. 2d 328 (E.D. Pa. 2011). Waterfront does not appeal the dismissal of these claims.

9

because *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 192 (1985), as well as *Taylor Investment Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1293-95 (3d Cir. 1993), require property owners asserting as-applied challenges to zoning ordinances to apply for a building permit or seek a variance before they may bring a claim, and because Waterfront had not met this requirement, those counts were unripe. *See id.* At the same time, the District Court rejected as "unacceptable" the City's arguments that the equal protection claim, Count VI, constituted an as-applied challenge, and therefore refused to dismiss that claim. *Id.* at * 8. Accordingly, after *Waterfront I*, the only constitutional claims that remained against the City were Counts I, VI, and VII.

Following a period of extensive discovery, Waterfront filed a second amended complaint on May 4, 2009, adding Count XV against the City. *See* Second Am. Compl., *CMR D.N. Corp. & Marina Towers Ltd. v. City of Phila.*, No. 2:07-cv-01045 (E.D. Pa. May 4, 2009), ECF No. 121. Count XV alleges that "the 65' height restriction was included in the March 2006 Ordinance solely for the improper, unlawful, and unconstitutional purpose of empowering unelected civic associations to control re-development" in the area it covered, and thus violated due process. *See* R. 129 (Compl. ¶ 254). Count XV also alleges that "[t]he height restriction . . . is unconstitutional because it effectively delegates land use and planning powers to non-governmental neighborhood associations. . . ." *Id.* ¶ 287. On these theories, Count XV seeks a declaratory judgment and a permanent injunction against the application of the March 2006 Ordinance as against all possible developers. The District Court later denied the City's motion to dismiss this new count, rejecting,

10

*inter alia*, the City's argument that Count XV asserted an unripe as-applied challenge. *Waterfront Renaissance Assocs. v. City of Phila.*, 701 F. Supp. 2d 633, 642 (E.D. Pa. 2010) ("*Waterfront II*"). Neither Waterfront nor the City have appealed any of the District Court's rulings in *Waterfront I* or *Waterfront II*.

### B. The Central Delaware Riverfront Ordinance and the Rescission of the Height Restriction Alter the Course of the Litigation

Subsequently, and while the litigation was pending, the City enacted two additional ordinances that altered the course of the lawsuit. First, in 2009 the City Council enacted a new zoning ordinance entitled the "Central Delaware Riverfront Overlay District" (the "CRO"). *See* FORMER PHILA. CODE § 14-1638 (2009); R. 416-21. The CRO covered some of the same plots to which the Old City Overlay had been extended by the March 2006 Ordinance, including Waterfront's Site. *See id.* § 14-1638(3); R. 687-88. The stated purpose of the CRO was to "protect the existing characteristics of the built and natural environment that are essential to achieving the working guidelines of the Civic Vision . . . while a Master Plan for the area is developed." *Id*. § 14-1638(1)(h). The Civic Vision was a comprehensive plan for the development of the Central Riverfront District, commissioned in 2006 by Mayor John Street, and adopted in 2009 by the Planning Commission as a statement of desirable zoning goals for the district. *See id.* § 14-1638(1)(a), (h). To achieve its purpose of protecting the characteristics of the built area in the Central Riverfront District while a "Master Plan" was developed, the CRO provides that an applicant for a zoning permit must first submit for approval a plan of development to the Planning

Commission. The CRO instructs the Planning Commission to approve the plan within seventy-five days by determining whether the proposed construction would be "appropriate in scale, density, character and use for the surrounding community." *Id.* § 14-1638(12)(a). The CRO contains an extensive list of prohibited building uses for the lots within the new overlay, as well as an extensive list of building requirements for new constructions. *See, e.g.*, *id.* §§ 14-1638(4), (5), (7) (requiring certain uses in ground floors of some buildings, and recreational trails and setbacks for other constructions). Finally, the CRO required the Planning Commission to issue regulations "providing objective standards" for the review of plans of development. *Id.* § 14-1638(12)(a). The Planning Commission issued such regulations on April 20, 2010 (the "CRO Regulations"). *See* R. 912-16. Neither the CRO nor the CRO Regulations define the phrase "appropriate in scale, density, character and use for the surrounding community."

Soon after the Regulations were issued, Waterfront moved under Rule 15 of the Federal Rules of Civil Procedure for leave to amend its complaint to add a Count XVI, asserting that the CRO and the CRO Regulations "[o]n their face . . . violate the constitutional principles of separation of powers, due process, and equal protection of the laws." R. 139 (Compl. ¶ 291). Waterfront alleges that the CRO and the CRO Regulations improperly delegate zoning power to the Planning Commission, violate equal protection because the phrase "appropriate in scale, density, character and use for the surrounding community" is "vague and indefinite," and violate substantive due process because they are "unrelated to any legitimate planning purpose." *Id.* ¶¶ 332-35.

Second, in early 2010 the City Council repealed the application of any height restrictions to most plots within the CRO, including the Site. *See* R. 197-98 (Bill No. 100014, adding a new subsection (12) to the CRO). Based on this development, the City argued that Waterfront's challenge to the 65' height restriction was moot. On August 26, 2010, after the District Court had permitted the parties to file several rounds of briefs on the question of mootness, Waterfront moved for leave to further amend its Complaint under Rule 15 to "clarify" that it was asserting a challenge to the width restriction of the March 2006 Ordinance, as well as the height restriction.

## C.     The District Court's Rulings

On March 11, 2011, ruling on the motion, the District Court allowed Waterfront to add Count XVI but denied its request to include a challenge to the width restriction. *CMR D.N. Corp. v. City of Phila.*, Civil Action No. 07-1045, 2011 WL 857294, at *1, 6 (E.D. Pa. Mar. 11, 2011) ("*Waterfront III*"). On the same day, the District Court dismissed Waterfront's constitutional challenges to the March 2006 Ordinance, reasoning that the rescission of the height restriction had mooted Waterfront's request for injunctive relief and that the claim for damages was "moot because [Waterfront] . . . did not apply for a zoning permit or variance from the height restriction. . . ." *CMR D.N. Corp. v. City of Phila.*, Civil Action No. 07-1045, 2011 WL 857296, at *7 (E.D. Pa. Mar. 11, 2011) ("*Waterfront IV*").

The City later moved for summary judgment on all remaining claims, including the constitutional challenge to the CRO and the CRO Regulations and the state law claims of

13

promissory estoppel, detrimental reliance, and unjust enrichment. On November 4, 2011, the District Court granted the City's motion. *See CMR D.N. Corp. v. City of Phila.*, 829 F. Supp. 2d 290 (E.D. Pa. 2011) ("*Waterfront V*").

## III.  Analysis

Waterfront timely appealed the District Court's rulings in *Waterfront III, Waterfront IV,* and *Waterfront V*, but did not appeal the dismissal of the unjust enrichment claim. Waterfront contends that the District Court (1) erred in dismissing as moot its contentions that the height restriction in the March 2006 Ordinance was facially unconstitutional; (2) abused its discretion in denying Waterfront leave to amend its Complaint to include the width restriction in its challenge to the March 2006 Ordinance; (3) erred in concluding that the CRO and the CRO Regulations are constitutional; and (4) erred in granting summary judgment to the City on the state law claims of promissory estoppel and detrimental reliance. We address each argument in turn.

### A.  Mootness of the Challenge to the March 2006 Ordinance

As previously noted, the City rescinded the application of the Old City Overlay's 65' height restriction to most of the lots covered by the CRO, including Waterfront's Site. The District Court subsequently held that the rescission mooted Waterfront's facial claims, including its request for an injunction and for compensatory and nominal damages. *See Waterfront IV*, 2011 WL 857296, at *1, 3-5.

Waterfront no longer contends that its request for injunctive relief against the height restriction presents a live

14

controversy. Accordingly, the sole question on appeal is whether the rescission similarly mooted Waterfront's request for compensatory and nominal damages. Waterfront also seeks declaratory relief. We review *de novo* a district court's determination that claims are moot. *See Ruocchio v. United Transp. Union, Local 60*, 181 F.3d 376, 382 (3d Cir. 1999).

### 1. *Compensatory Damages*

The District Court held that Waterfront's "claims for damages in connection with its facial constitutional challenges are moot" because the height restriction was rescinded and because Waterfront "never applied for a zoning permit or variance, and the height restriction never was enforced as to its project." *Waterfront IV*, 2011 WL 857296, at *5. The District Court ruled that, as an alternative, the claim for damages was speculative, due to the failure to seek a permit, and therefore could not proceed. *Id.* at *6.

As to the District Court's holding that the claim for damages was moot, we have stated that "[d]amages should be denied on the merits, not on grounds of mootness." *Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.*, 983 F.2d 485 (3d Cir. 1992) (internal citation omitted). Claims for damages are retrospective in nature–they compensate for past harm. By definition, then, such claims "cannot be moot," *Lippoldt v. Cole*, 468 F.3d 1204, 1204 (10th Cir. 2006), and "[a] case is saved from mootness if a *viable* claim for damages exists." *Khodara Envtl., Inc. v. Beckman*, 237 F.3d 186, 196 (3d Cir. 2001) (citing *Nat'l Iranian*, 983 F.2d at 489) (emphasis added). Accordingly, we disagree with the District Court's conclusion that Waterfront's claim for damages was moot,

15

but nevertheless agree with the District Court that the claim for damages cannot proceed, for the reasons that follow.[6]

Pursuant to *Khodara,* the relevant question is whether Waterfront has a *viable* claim for damages that would save its case from mootness—i.e., whether damages are a proper remedy for Waterfront's claims. It is black letter law that the remedy available to a plaintiff should reflect the right that such plaintiff seeks to vindicate. 1 DOBBS LAW OF REMEDIES § 1.7, at 27. In this case, as we describe below, there is some disagreement as to the type of claim Waterfront asserts. We therefore carefully consider different interpretations of the claims for which Waterfront seeks damages, and consider whether damages are indeed a proper remedy under each alternative.

Waterfront seeks damages in connection with Counts I and VI of the Complaint, which allege, respectively, that the height restriction violates due process because it is "arbitrary and capricious" and that it violates equal protection. The first possible interpretation of these counts—the one suggested by Waterfront—is that they assert a facial challenge against the height restriction. Indeed, the District Court accepted such characterization over the City's objections. *See Waterfront I*, 2008 WL 862705, at \*7-8. However, Waterfront's arguments throughout this litigation have belied its contention that those counts constitute a facial challenge. A party asserting a facial challenge "seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the

---

[6] We may affirm the District Court's ruling on alternative legal grounds established by the record. *Erie Telecomm., Inc. v. City of Erie*, 853 F.2d 1084, 1089 (3d Cir. 1988).

16

statute in question." *City of Chi. v. Morales*, 527 U.S. 41, 55 n.22 (1999). In a facial challenge, the plaintiff does not seek to establish that the law cannot be applied to him; rather, he or she must show that "no set of circumstances exists under which the [challenged] Act would be valid." *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (en banc) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Waterfront's claims do not in any way meet these criteria or otherwise resemble a facial challenge. First, as a general matter, Waterfront's entire theory of the case is that the inclusion *of its own Site* was a mistake, not that the enactment of the ordinance as a whole was a mistake or that the height restriction could not be constitutionally applied to any property. Second, neither Count I nor VI alleges that the height restriction cannot be constitutionally applied under any circumstances. Instead, those counts refer to the application of the height restriction to Waterfront alone. *See, e.g.*, R. 113, 120 (Compl. at 28 (requesting declaration that Waterfront's "Site is not subject" to the March 2006 Ordinance); ¶ 206 (contending that "any application" of the March 2006 Ordinance to "[Waterfront's] Site" is unconstitutional)). Third, Waterfront's arguments on appeal repeat this trend, focusing on the fact that "the March 2006 Ordinance prevents [Waterfront] from proceeding lawfully," Appellant's Br. at 19, and not once explaining why the ordinance cannot be constitutionally applied under any circumstance. This pattern persisted at oral argument, where Waterfront characterized this case as seeking to vindicate its own rights, not the rights of others. *See, e.g.*, Oral Argument at 3:07-3:11 ("our argument focuses on the application of the Old City Overlay to our Site"); 9:15-9:17 ("we challenged the application of the Old City Overlay to our project"); 16:38-

16:55 ("our theory in the complaint always was that we wanted the extension of the ordinance stricken as it applied to our Site . . . we said this overlay extension shouldn't apply to our Site."), *available at* http://www.ca3.uscourts.gov/oralargument/audio/11-4362CMRD.N.Corpv.CityofPhila.wma.[7]

Our reluctance to recognize Waterfront's claims as facial challenges is supported by the Supreme Court's repeated admonitions that facial challenges are disfavored and should be considered sparingly. *See, e.g.*, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). This is so because facial challenges seek the broad remedy of a complete invalidation of a law and because a ruling on the constitutionality of all possible applications of a statute necessarily "rest[s] on speculation" and invites the "premature interpretation of statutes." *Id.* (internal citations omitted).

But even taking Waterfront's word that it asserts a facial challenge seeking to bar enforcement of the height restriction against all possible developers, we agree with the City that damages are not available to Waterfront under that

---

[7] The allegations in Counts I and VI of the complaint stand in sharp contrast to Count XV of the complaint, where Waterfront asserted that the height restriction was unconstitutional on its face because it sought to delegate zoning power to civic associations. *See id.* ¶ 289. Waterfront did not seek damages in connection with Count XV and, in any event, damages would not have been a proper remedy for that facial attack, for the reasons stated in the following paragraphs.

theory of the case. *See* Appellees' Br. at 26, n.4. When a litigant challenges the legality of a zoning law on the theories that the law violates equal protection or is arbitrary and capricious, for "a facial challenge, the remedy is the striking down of the regulation. In the case of an as applied challenge, the remedy is an injunction preventing the unconstitutional application of the regulation to the plaintiff's property and/or damages . . . ." *Eide v. Sarasota Cnty.*, 908 F.2d 716, 722 (11th Cir. 1990) (citation omitted). This is so because, in a facial challenge, "the claimed constitutional violation inheres in the terms of the statute, not its application . . . [t]he remedy is necessarily directed at the statute itself and *must* be injunctive and declaratory." *Ezell v. City of Chi.*, 651 F.3d 684, 698 (7th Cir. 2011) (citation omitted) (holding that damages are not available for a facial challenge to a gun control law). Thus, "a victory by the plaintiff in [facial challenges] normally results in an injunction or a declaratory judgment, which serves the broad societal purpose of striking an unconstitutional statute from the books," whereas an as-applied plaintiff "merely requests monetary damages." *Weissmann v. Fruchtman*, 700 F. Supp. 746, 748, 753 (S.D.N.Y. 1988). Waterfront has cited to no case awarding compensatory damages to a plaintiff asserting only a facial attack against a zoning law under equal protection or the "arbitrary and capricious" theory. *Cf. Daskalea v. Wash. Humane Soc'y*, 710 F. Supp. 2d 32, 42 (D.D.C. 2010) (noting that the plaintiffs had not "cited a single case in which monetary damages were awarded in connection with a facial due process challenge" and holding that such remedy was not legally available). Thus, even if Waterfront's claims truly are facial attacks, damages are not a proper remedy.

The District Court seemed to suggest at times that a claim for damages in the context of a facial challenge to a zoning law under these theories is, at best, unprecedented. *See, e.g.*, *Waterfront IV*, 2011 WL 857296, at *4. But the Court, and apparently Waterfront, also reasoned that our decision in *Lighthouse Institute for Evangelism v. City of Long Branch*, 510 F.3d 253 (3d Cir. 2007) stands for the proposition that, as a general matter, damages are a proper remedy for facial challenges. *See* Appellant's Br. at 27-28. In *Lighthouse* a regulation was challenged on its face as a violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act. We held that repeal of that regulation mooted the claim for declaratory relief but nonetheless permitted the plaintiff's claims for damages to go forward. *See id.* at 260-61 (citing *Donovan v. Punxsutawney Area School Bd.*, 336 F.3d 211, 218 (3d Cir. 2003)). Critically, however, *Lighthouse* and *Donovan* involved challenges under the First Amendment. "The courts have repeatedly shown solicitude for First Amendment claims . . . with regard to facial challenges to a statute." *Peachlum v. City of York*, 333 F.3d 429, 435-36 (3d Cir. 2003). We show this solicitude, and permit damages for facial challenges in the First Amendment context, because First Amendment rights are "central to guaranteeing our capacity for democratic self-government." *Risdal v. Halford*, 209 F.3d 1071, 1072 (8th Cir. 2000). These concerns are not present in the context of challenges to zoning laws, where we have been careful to defer to local governments. *See Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1035 (3d Cir. 1987). Thus, *Lighthouse* does not establish the availability of damages for a facial due process challenge to a zoning ordinance.[8]

---

[8] Moreover, in *Lighthouse* the plaintiff had actually applied

Our statement in *County Concrete Corporation v. Township of Roxbury*, 442 F.3d 159, 168 (3d Cir. 2006), that "the remedies for a successful substantive due process or equal protection claim as to the face of a zoning ordinance are the invalidation of the regulation and actual damages," also does not establish the availability of damages in this context. The theory of liability advanced in *County Concrete* was that the county had enacted a law "specifically directed" or "aimed at" the plaintiff's land. *Id.* at 167, 170. We continue to adhere to *County Concrete's* conclusion that it "would be an exercise in futility to require appellants to seek a variance from an ordinance specifically directed at their properties." *Id.* at 167. But that is not the type of facial challenge that Waterfront asserts in this case. Rather than alleging that Waterfront was specifically and unlawfully targeted by the March 2006 Ordinance, Waterfront claims that it was *mistakenly included* in the reach of the law. Waterfront's theory of the case is thus clearly distinguishable from, and in fact is the opposite of, the type of claim asserted in *County Concrete.*

---

for and was denied a permit under the later-repealed ordinance. *See Lighthouse*, 510 F.3d at 259. The compensation permitted in that case was therefore connected to a specific application of the ordinance to the plaintiff. It is thus not clear that *Lighthouse* actually permitted a damages claim to go forward in connection with a facial challenge, as opposed to an as-applied challenge. *See Tanner Adver. Grp. v. Fayette Cnty.*, 451 F.3d 777, 786 (11th Cir. 2006) (holding that plaintiff could not request damages for a facial challenge to a zoning ordinance under the First Amendment because the provision "ha[d] not yet harmed" the plaintiff).

21

A second alternative to understanding Waterfront's claims is, as mentioned above, that Counts I and VI truly assert as-applied challenges. So understood, however, those counts should have been dismissed for the same reason the District Court dismissed Waterfront's other constitutional claims—because they were unripe under the rules of *Williamson County Regional Planning Commission v. Hamilton Bank* and *Taylor Investment v. Upper Darby Township*. *See supra* at 8. In *Williamson County*, the Supreme Court held that claims that a zoning law constituted a taking under the Fifth Amendment and went too far by depriving plaintiff of all viable use of his or her property, were not ripe until the zoning authority had made a "final decision" to deny the plaintiff a permit under the law. 473 U.S. 172, 186-94 (1985). Ripeness could not occur until the plaintiff challenging the ordinance sought and was denied a variance or a permit under the ordinance. *Id.* Thereafter, we held that *Williamson County's* "finality rule" applied to challenges to ordinances based both on procedural due process or equal protection grounds, and on a theory that a regulation violated due process because it was arbitrary and capricious. *See Midnight Sessions, Ltd. v. City of Phila.*, 945 F.2d 667, 686 (3d Cir. 1991) (applying finality rule to "arbitrary and capricious" theory); *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1292-94 (3d Cir. 1993) (applying finality rule to procedural due process and equal protection challenge). Because it is undisputed that Waterfront never applied for a building permit under the March 2006 Ordinance, if the claims for which it seeks damages are actually as-applied claims, which we believe they are, then such claims are not ripe and cannot proceed.

As a third and final alternative, Waterfront suggests that it asserts a hybrid as-applied/facial challenge to the height restriction. The argument is that the height restriction was unconstitutional on its face as applied to Waterfront and that Waterfront was harmed by the mere enactment of the ordinance. *Waterfront IV*, 2011 WL 857296, at \*4. As the District Court noted, however, the proper remedy for such a claim is an injunction, unless and until the offending law is actually applied to the plaintiff. *See id.* (citing *Daskalea*, 710 F. Supp. 2d at 43). Indeed, as in *Ezell*, where the plaintiffs sought damages for the mere existence of an ordinance that would have required them to travel out of town to obtain a gun permit, Waterfront's hybrid theory here would be that "the City Council violated [the Constitution] by enacting the [Ordinance] in the first place. If [it] prevail[s], the *only* appropriate remedy is a declaration that the [Ordinance] is invalid and an injunction forbidding its enforcement." *Ezell*, 651 F.3d at 699 n.10 (emphasis in original). Waterfront cites to no case awarding anything other than injunctive relief to a plaintiff who asserts that it was harmed by the mere enactment of a zoning law, where the plaintiff has not applied for a permit. *See also Rumber v. District of Columbia,* 595 F.3d 1298, 1300 n.1 (D.C. Cir. 2010) (claim for compensatory damages did not save from mootness an action to enjoin eminent domain against a property because "no property ha[d] been taken from [the] plaintiffs"); *Angino v. Wan Wagner*, No. 1:CV-05-1748, 2009 WL 2859041, at \*14-15 (M.D. Pa. Sept. 3, 2009) (Vanaskie, J.) (holding that damages were not available to a plaintiff who challenged an ordinance under a due process theory because the plaintiff had not sought a permit and therefore any claim for damages was "purely speculative").

23

Limiting the available remedy to an injunction for such a claim complements our relaxation of *Williamson County's* requirement that a zoning authority make a "final decision" before a developer may bring suit. We have held that this rule does not apply to facial challenges because it is not necessary to advance the rule's underlying purpose—to allow the court to determine the extent to which a particular plaintiff has been harmed by a zoning law. *See Williamson Cnty.*, 473 U.S. at 191, 199-200; *see also Taylor*, 983 F.2d at 1291 (finality rule recognizes that the property owner suffers no constitutional injury until the zoning authority "defines the harm to the owner"). Because the claim in a facial challenge is that a law cannot be applied to anyone, there is no need to, and no ability to determine the full extent to which any particular plaintiff has been harmed. A district court is therefore unable to properly ascertain compensatory damages under those circumstances. Thus, far from being futile, as Waterfront suggests, requiring a developer to seek a permit even when the law clearly prohibits the construction he or she desires, permits the court to rule on an actual, ripe controversy. If, as Waterfront repeatedly contends, the Site was included in the ordinance by mistake, the application process may well have yielded an exception for Waterfront. The rule also permits the court to ascertain the actual extent of the harm to the claimant. On the other hand, little would be left of the *Williamson County* finality rule if we relaxed it so that a plaintiff could obtain damages and avoid the obligation to seek a permit altogether by artfully pleading its case as a "hybrid facial/as-applied" claim as opposed to what we believe Waterfront's claim really is—an as-applied claim.

In keeping with our obligation to not entertain speculative claims, and in the interest of highlighting the

24

importance of the finality rule, we hold that compensatory damages are not available to a plaintiff challenging a zoning ordinance under the theory that the mere enactment of an ordinance harmed such plaintiff, unless the plaintiff applies for and is denied a permit under the offending statute.[9]

Our decision does not leave developers in Waterfront's predicament without a remedy. Waterfront could have had a non-moot claim for money damages had it complied with the long-established requirement that it seek a permit or a variance before asserting a legal challenge to the ordinance on its own behalf. For unexplained reasons, it chose not to do so. Waterfront instead chose to request that the federal courts declare a certain portion of the zoning ordinance unconstitutional under all circumstances. The proper remedy had Waterfront been successful would have been to enjoin the application of the offending portions of the ordinance, not to award money damages.

### 2. *Nominal Damages*

The District Court also concluded that nominal damages were unavailable because they would be speculative.

---

[9] The Eleventh Circuit has held that a claim that the mere enactment of a statute harms a plaintiff is properly understood as an as-applied claim to which the finality rule applies. *See Executive 100, Inc. v. Martin Cnty.*, 922 F.2d 1536, 1541 (11th Cir. 1991). Our holding is simply another way of saying what the Eleventh Circuit said in *Executive 100*—to be entitled to damages, a plaintiff alleging that it has been harmed by the enactment of an ordinance must comply with the *Williamson County* finality rule.

25

*See Waterfront IV*, 2011 WL 857296, at \*6 (citation omitted). Waterfront contends that it is entitled to nominal damages "for a deprivation of the constitutional right to due process." Appellant's Br. at 31 (citing *Farrar v. Hobby*, 506 U.S. 103, 112 (1992)). This argument rests on a misunderstanding of nominal damages.

Nominal damages have traditionally "vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury. . . ." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). The Supreme Court in *Carey* concluded that procedural due process was an "absolute" right the denial of which entitled a plaintiff to nominal damages even without proof of actual injury. *Id.* In *Carey*, however, the plaintiffs did not bring a facial challenge to a statute. Instead, the plaintiffs challenged an actual deprivation of an entitlement pursuant to allegedly faulty adjudicative procedures. *See id.* at 251 (plaintiffs' claims were based on actual "suspension [from school] without any adjudicative hearing of any type" (citation omitted)). In other words, the application of unconstitutional procedures constitutes an injury in and of itself, for which nominal damages are appropriate regardless of whether the plaintiff was able to prove an actual injury resulting from the deprivation. The holding of *Carey* has been applied in cases involving the violation of First Amendment rights, including situations where a plaintiff's request for injunctive relief has been mooted because she was no longer subject to the offending law. *See, e.g.*, *Corder v. Lewis Palmer Sch. Dist.*, 566 F.3d 1219, 1224-25 (10th Cir. 2009) (student plaintiff was entitled to nominal damages because her diploma had been withheld in violation of her free speech rights).

But, like in *Carey*, the plaintiffs in those cases were subjected to *actual* violations of constitutional rights. Here, it is undisputed that Waterfront never sought and was not denied a building permit under the March 2006 Ordinance. In sharp contrast to the plaintiffs in *Carey* or *Corder*, who suffered a specific deprivation pursuant to the unconstitutional statute or procedures, Waterfront was never subjected to unconstitutional procedures, wrongfully denied a permit under an ordinance that was potentially unconstitutional, or otherwise subjected to a constitutional deprivation. The only arguable harm that Waterfront has been subjected to is the mere existence of a law that it alleges is unconstitutional. We find no authority, and Waterfront has provided none, for the proposition that a plaintiff is entitled to nominal damages simply based on the existence of a zoning law that has never been applied to it. That a legislature may enact a zoning law that if applied to someone would violate due process does not entitle any individual who finds it offensive, including those never subjected to the ordinance, to nominal damages.[10]

### 3. *Declaratory Relief*

The District Court also dismissed as moot Waterfront's claim for declaratory relief. Waterfront contends that a declaratory judgment is necessary to "resolve [its] claim for money damages." Appellant's Br. at 32. The purpose of a

---

[10] As with respect to actual damages, whether nominal damages would be available if a plaintiff was unlawfully and selectively targeted by the enactment of a law is not an issue in this case. *See Daskalea*, 710 F. Supp. 2d at 44 (suggesting nominal damages may be available under such a theory).

27

declaratory judgment is to "declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The remedy is thus by definition prospective in nature. Waterfront's contention that a declaratory judgment is necessary to award damages is therefore incorrect. As in *Khodara*, here "a declaration of unconstitutionality or injunction directed against the objectionable features" of the March 2006 Ordinance "would serve no purpose today. Where a law is amended so as to remove its challenged features, the claim . . . becomes moot as to those features." *Khodara*, 237 F.3d at 194 (internal citations omitted) (alteration in original). Moreover, in light of our conclusion that neither injunctive nor monetary relief are available, Waterfront's request is moot even if a declaratory judgment is a necessary precursor to awarding damages.

### B.     The Motion to Amend the Complaint

While the mootness question was pending, Waterfront pursued an alternative strategy to stave off dismissal. Specifically, Waterfront moved under Rule 15 of the Federal Rules of Civil Procedure for leave to "clarify" that its complaint also attacked the facial constitutionality of the March 2006 Ordinance's extension of the 70' width restriction to the area including the Site. Waterfront's motion to amend was filed after the District Court had accepted several rounds of briefs from both parties regarding the mootness question, as well as after Waterfront's motion to amend its Complaint to assert claims against the CRO. The District Court denied the motion, reasoning that Waterfront had "engaged in undue delay" in asserting a challenge to a restriction that had been in existence since the lawsuit was filed, and that the proposed change would prejudice the City

28

because it constitutes "a change to [Waterfront's] theory of liability." *Waterfront III*, 2011 WL 857294, at \*6 (citations omitted). Waterfront vigorously attacks the District Court's denial of its motion for leave to amend. We have considered each of Waterfront's contentions, and reject them for the reasons that follow.

A district court's decision to deny a motion for leave to amend a complaint under Rule 15(a)(2) is reviewed for abuse of discretion. *See, e.g.*, *Estate of Oliva v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010). The motion should be granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). We are mindful that the pleading philosophy of the Rules counsels in favor of liberally permitting amendments to a complaint. *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). The motion is nevertheless committed to the "sound discretion of the district court." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).

Waterfront makes much of our statement that "prejudice to the nonmoving party is the touchstone for the denial of the amendment." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990) (citation omitted). Waterfront argues that the proposed amendment would not prejudice the City in that Waterfront would seek no further discovery with respect to the new claim and that the District Court abused its discretion because it made no finding that the amendment would cause the City discovery-related prejudice.

Waterfront's arguments ignore that discovery-related prejudice is not the only prejudice that may justify denial of a motion for further leave to amend a pleading. We have also explained that a significant, unjustified, or "undue" delay in

seeking the amendment may itself constitute prejudice sufficient to justify denial of a motion for leave to amend. *See, e.g.*, *Cureton*, 252 F.3d at 273 ("the question of undue delay requires that we focus on the movant's reasons for not amending sooner."). Following this principle, we have refused to overturn denials of motions for leave to amend where the moving party offered no cogent reason for the delay in seeking the amendment. *See, e.g.*, *Oliva*, 604 F.3d at 803 (no justification for a five-year delay); *Bjorgung v. Whitehall Resort*, 550 F.3d 23, 26 (3d Cir. 2008) (no explanation for three-year delay); *Cureton*, 252 F.3d at 273-74 (no reasons given for two-and-a-half year delay).

Here, Waterfront has proffered no good reason for failing to mention the width restriction in any of its court filings until late 2010, over three years after it filed its original complaint in 2007. Instead of explaining the delay, Waterfront attempts to shift the timeframe of analysis. It argues that it only delayed by five months between when the City raised the mootness issue in April of 2010 and when Waterfront filed its motion in August of 2010. Waterfront contends that this shift is proper because "[i]t was not until the City sought to dismiss [Waterfront's] claims as moot that [it] understood the City had overlooked the fact that the March 2006 Ordinance imposed a width limit as well as a height limit." Appellant's Br. at 25; *see also* Appellant's Reply Br. at 3. We reject this argument. For one, it is a plaintiff's burden to set forth the grounds on which it rests a claim for relief. *See* Fed. R. Civ. Proc. 8(a). Moreover, if there was any oversight as to what portions of the Old City Overlay aggrieved Waterfront, it was of its own doing. Waterfront has conceded, as it must, that it "did not specifically reference the width limit in its complaint." R.

482. By contrast, the 65' height restriction, or height restrictions generally, are explicitly mentioned over two dozen times. *See, e.g.*, R. 114-15, 118, 122, 129-38 (Compl. ¶¶ 172, 174, 180c, 190, 218, 254-55, 267-68, 284-85, 287).

But, even if the timing of the filing of the motion should be measured from the time when the City first raised the mootness argument, Waterfront delayed filing the motion until after it had filed several briefs on the mootness point, totaling hundreds of pages, as well as a motion to amend the complaint to add the CRO to the case. None of those filings, which occupied the District Court's time over the course of several months, mentioned the width restriction. We consider this sequence of events to be an "unwarranted burden on the court" that also counsels against granting Waterfront's request for an additional amendment. *Cureton*, 252 F.3d at 273 (citation omitted).

Moreover, the District Court correctly determined that the City would be prejudiced because the proposed amendment would bring a new theory into the case several years after the beginning of the litigation. Waterfront contends that the addition of the width restriction does not constitute a new theory of liability because the complaint "sought relief against the March 2006 Ordinance as a whole." Appellant's Br. at 21. It is true that Waterfront's complaint mentioned the March 2006 Ordinance more generally on occasion, but, as mentioned, the complaint is replete with specific mentions of the height restriction and not any mention of the width issue.

Finally, Waterfront contends that the addition of the width restriction would not constitute a new theory because

31

the width restriction is a "*de facto* 'height' restriction that prevents [Waterfront's] high-rise project." Appellant's Reply Br. at 1, 7. This argument begs the question of why, if it was so obvious that the width restriction was a problem, Waterfront never mentioned it explicitly at least once in its several complaints.[11]

While we are cognizant of the liberal amendment policy of the Rules, it is also true that they give district courts discretion to deny a motion in order to forestall strategies that are "contrary to both the general spirit of the federal rules and the liberal amendment policy of Rule 15(a)." 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1488, at 814 (1984) (Supp. 2012). We find no reason for Waterfront's failure to mention the width restriction until 2010, other than because the motion was simply an attempt to avoid dismissal due to mootness. Like in *Cureton*, the District Court here "had considerable familiarity with the development of the factual and legal issues" and "carefully analyzed plaintiffs' proffered reasons for delay, the prejudice to [the defendant], and the substance of the amended complaint." *Cureton*, 252 F.3d at 274. We therefore conclude that the District Court conscientiously applied the

---

[11] Waterfront's argument that the width restriction was supposedly mentioned at depositions does not change this conclusion. The proper focus of the inquiry is whether Waterfront raised the argument in its pleadings or other filings in court, not whether an attorney at an open-ended deposition asked one question.

principles embodied by the Rules, and did not abuse its discretion in denying Waterfront's motion to further amend.[12]

## C. The Constitutional Challenge to the CRO and CRO Regulations

The District Court did permit Waterfront to amend its complaint to allege that the CRO and CRO Regulations were unconstitutionally vague and violated due process because they unlawfully delegated zoning power to the Planning Commission. On November 4, 2011, however, the court granted the City's motion for summary judgment on both theories, which Waterfront now challenges on appeal. We address each contention separately below, reviewing *de novo* rulings regarding the constitutionality of a statute. *See, e.g.*, *United States v. Weatherly*, 525 F.3d 265, 273 (3d Cir. 2008).

### 1. The CRO is not Unconstitutionally Vague

Waterfront's principal theory is that the CRO and the CRO Regulations violate due process on their face because they leave undefined the phrase "development appropriate in scale, density, character and use for the surrounding community." FORMER PHILA. CODE § 14-1638(12) (2009). Waterfront contends that because that phrase is vague, it cannot comply with the CRO's requirement to submit a plan

---

[12] Following oral argument, the parties informed us that the width restriction has also been rescinded. *See* PHILADELPHIA, PA. ZONING CODE §§ 14-502, 14-507 (2012). Thus Waterfront's attempt to amend the complaint is now futile as well.

of development that meets those characteristics. *See* Appellant's Br. 34-39.[13]

The Supreme Court has explained that laws must not fail to "give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited. . . ." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)). To succeed on a facial vagueness challenge, the plaintiff must "demonstrate that the law is impermissibly vague in all of its applications." *Id.* at 498. Importantly, "economic regulation is subject to a less strict vagueness test" than criminal laws because businesses "may have the ability to clarify the meaning of the regulation by its own inquiry." *Id.* at 498-99. In determining whether a statute is unconstitutionally vague, we look to the law as a whole to determine whether a person of ordinary intelligence may be able to ascertain the meaning of the challenged terms. *See Grayned*, 408 U.S. at 110. That an ordinance may contain some ambiguities does not render it impermissibly vague. *Vill. of Hoffman Estates*, 455 U.S. at 502 (upholding ordinance that did "contain ambiguities"). Thus, to find an

---

[13] It is unclear whether the vagueness argument asserts a due process or an equal protection challenge. *Compare* Appellant's Br. at 34-39 (using due process language) *with id.* at 40-42 (citing *Taylor v. Moore*, 154 A. 799 (Pa. 1931) for the proposition that the alleged vagueness offends equal protection principles); *cf. Waterfront V*, 829 F. Supp. 2d at 303-04 (couching vagueness argument as equal protection claim). Because we conclude that the CRO and the CRO Regulations are not unconstitutionally vague, Waterfront's argument fails under either theory.

economic civil statute void for vagueness, it must be so vague as to be "no rule or standard at all." *Boutilier v. Immigration & Naturalization Serv.*, 387 U.S. 118, 123 (1967).

Guided by these principles, it is clear from the entirety of the CRO and the CRO Regulations that they do not provide "no standard at all." First, the words on which Waterfront focuses, "surrounding community," have clear, ascertainable meanings. It is undisputed that the geographical reach of the CRO is clearly defined and unambiguous. *See* FORMER PHILA. CODE § 14-1638(3) (2009). Thus, there is no confusion as to the geographical scope of the statute, which logically informs the use of the word "community" in the law. Moreover, the word "surrounding" in this context has an easily ascertainable meaning: "being the environment or adjacent areas," RANDOM HOUSE WEBSTER'S DICTIONARY at 1916 (2d Ed. 1999). Thus, a developer need only look at other structures in the immediate vicinity of a proposed project to determine whether it is similar to existing constructions in "scale, density, character or use," words which Waterfront does not and cannot contend are ambiguous. FORMER PHILA. CODE § 14-1638(12) (2009). If a developer of reasonable intelligence faces a close call after analyzing the constructions in the district, it can apply for a permit to eliminate any remaining ambiguity. This is sufficient to comply with constitutional requirements. *See Vill. of Hoffman Estates*, 455 U.S. at 498-99.

We find further support for our conclusion in decisions of our sister Circuits regarding similarly-worded zoning ordinances. In *Mayes v. City of Dallas*, 747 F.2d 323 (5th Cir. 1984), the court held that an ordinance which required certain aspects of new buildings to "harmonize" with the

35

"overall character" of a district, or with certain "surrounding structures," did not unlawfully fail to set forth "objective, articulated standards sufficient to prevent the arbitrary exercise of government power." *Mayes*, 747 F.3d at 324-25. Similarly, the Fourth Circuit has held that an ordinance requiring projects to be "compatible" with and to "preserve the rural character of the . . . agricultural community," is not unconstitutionally vague, noting that the term "compatible" had only one logical meaning. *Henry v. Jefferson Cnty. Planning Comm'n*, 215 F.3d 1318 (4th Cir. June 9, 2000) (table opinion). In doing so, the court also noted that specific provisions of the ordinance, as well as its stated legislative purposes, provided builders with "sufficient notice and warning as to what requirements [they] must meet in order to obtain" a building permit. *Id.*

Indeed, as in *Henry*, many provisions of this statute go a long way toward eliminating ambiguity (if any exists at all) in the words "surrounding community." The CRO has a stated legislative purpose, which is to permit construction in the district pursuant to the guidelines set forth in the Civic Vision while a more comprehensive plan for the improvement of the district is developed. *Id.* § 14-1638(1)(h). And, as catalogued above, both the CRO and the CRO Regulations contain a long list of prohibited and permitted uses for lots within the area they cover, and specify detailed requirements for new constructions. *See, e.g.*, *id.* §§ 14-1638(4)-(9). These provisions thus narrow the universe of structures a potential builder could consider in determining whether a project would pass muster under the CRO. Finally, the CRO Regulations list seven specific factors that the Planning Commission must consider in evaluating a proposed plan of development, directing the Planning Commission's review of

36

proposed plans submitted under the CRO and thereby further alleviating any remaining ambiguities. *See Maher v. City of New Orleans*, 516 F.2d 1051, 1062 (5th Cir. 1975) ("To satisfy due process, guidelines to aid a commission charged with implementing a public zoning purpose need not be so rigidly drawn as to prejudge the outcome in each case, precluding reasonable administrative discretion").

### 2. The CRO does not Unlawfully Delegate Authority to the Planning Commission

Waterfront also contends that the CRO and the CRO Regulations violate substantive due process because they irrationally permit the Planning Commission to "control the issuing of zoning permits on the basis of the Civic Vision and the Master Plan instead of the existing zoning," and because such delegation of power is unlawful under the Philadelphia Home Rule Charter. Appellant's Br. at 43.

Waterfront's irrationality argument ignores our repeated admonitions that we:

> largely defer to legislative judgment on such matters as zoning regulation because of the recognition that the process of democratic political decisionmaking often entails the accommodation of competing interests, and thus necessarily produces laws that burden some groups and not others. This court will not substitute its judgment about land use policy and thereby undermine the legitimacy of democratic decisionmaking unless the local

> legislative judgment is without a plausible rational basis.

*Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1035 (3d Cir. 1987) (internal quotation marks and citation omitted). Waterfront posits that it was irrational to delegate zoning power to implement the Civic Vision, a document that Waterfront contends was designed to outline zoning goals and not to carry the force of law. Even accepting Waterfront's dubious characterizations of the effect of the CRO, we fail to see anything irrational in deciding to enact into law a zoning document approved by the Planning Commission, the very agency entrusted to advise the City on zoning matters, simply because the document was originally conceived as providing aspirational, non-binding goals. Nor can Waterfront seriously contend that the City Council may not rationally conclude that such an entity should have a say in the approval of specific projects, given that the entity is specifically required by the City Charter to advise the City Council on zoning matters. *See* 351 PA. CODE §§ 4.4-601, 4.4-604.

Waterfront's argument that the CRO is an unlawful delegation of power to the Planning Commission also fails. A violation of state laws governing the allocation of power between local entities does not, without more, establish a federal substantive due process violation. *See, e.g.*, *Baker v. Coxe*, 230 F.3d 470, 474 (1st Cir. 2000).[14]

---

[14] Moreover, although it is true that the Philadelphia Charter gives the Licensing Department the express power to issue building permits, it also permits the City Council to add new powers and duties to agencies if not otherwise inconsistent with the Charter. *See* 351 PA. CODE § 2.2-305. Thus, any

38

We conclude that the CRO and the CRO Regulations are not unconstitutionally vague, and that any delegation of zoning authority to the Planning Commission by the CRO does not violate the due process clause. Summary judgment on Waterfront's claims against the CRO and the CRO Regulations was proper.

### D. The Promissory Estoppel and Detrimental Reliance Claims

Finally, Waterfront asserts state law claims of promissory estoppel and detrimental reliance. The District Court granted summary judgment to the City against these claims, *Waterfront V*, 829 F. Supp. 2d at 304-05, a ruling we review *de novo*, applying the same legal standard applied by the District Court. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 580-81 (3d Cir. 2009). Summary judgment is only appropriate if, after reviewing the record in the light most favorable to the nonmoving party, it is apparent that there is no genuine dispute as to any fact material to the legal claims at issue in the case. *Id.* at 581. Whether a disputed fact is material depends on the elements of the cause of action on which the claim for relief is based. For Waterfront to prevail under these state law theories, it must establish that (1) the City made a promise it "reasonably expect[ed] to induce action or forbearance by [Waterfront], (2) the promise does induce action or forbearance by [Waterfront], (3) and injustice can only be avoided by enforcing the promise."

---

delegation of zoning or permit-issuing power to the Planning Commission, if the CRO can even be fairly characterized as such, is permitted by Philadelphia's laws.

*Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir.1990) (citation omitted).[15]

The District Court concluded that Waterfront failed to satisfy the first element because there was insufficient evidence that the City had made a "valid and enforceable promise" to Waterfront. *See Waterfront V*, 829 F. Supp. 2d at 304-05. Waterfront posits that this was error because under Pennsylvania law a specific promise is not required, but rather "[r]epresentations made to the plaintiff" are sufficient. Appellant's Br. at 49. But it is a basic tenet of contract law that "mere expression[s] of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance." 3 CORBIN ON CONTRACTS § 8.9, at 29-30 (Rev. Ed. 1996); *see also C&K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1989) (refusing to permit an action for detrimental reliance based on a "broad and vague implied promise").

Here, the totality of the relevant facts reveals at most that the City and certain of its entities supported Waterfront's pursuit of the World Trade Center project at various times. For example, the City supported the Project by recommending Waterfront to receive a World Trade Center license, by participating in the feasibility study committee, and by brokering or supporting negotiations between Waterfront and civic associations. *See supra* at 3-5. The record also shows that City officials made statements in

---

[15] Promissory estoppel and detrimental reliance claims are treated interchangeably by Pennsylvania courts. *See, e.g.*, *Rinehimer v. Luzerne Cnty. Cmty. Coll.*, 539 A.2d 1298, 1306 (Pa. Super. Ct. 1988).

support of Waterfront's partnership with the Port Authority (but it is undisputed that the City was not a party to this agreement), and it is also true that the City included Waterfront's Site in a request to receive from the Commonwealth tax-preferred status for certain neighborhoods in the City. Finally, the record shows that certain City agencies were aware of the importance to Waterfront of maintaining restriction-free zoning status. *See, e.g.*, R. 724 (presentation by Waterfront to the Licensing Department in February of 2002 explaining that continuous C-4 zoning was important for the Project). None of these facts, however, can fairly be interpreted as the type of representation by the City that would be sufficient to bind it under the doctrine of promissory estoppel, and Waterfront has not otherwise pointed to any commitment of any type by City officials, let alone statements that the City was committed to adhering to its present intentions indefinitely.

Moreover, the cases cited by Waterfront in support of its position are distinguishable. *See Bootel v. Verizon Directories Corp.*, No. Civ. A. 03-1997, 2004 WL 1535798, *9-10 (E.D. Pa. June 25, 2004) (involving an affirmative representation to a plaintiff that she could rely on a written policy as if it were a binding contract); *Pennsy Supply, Inc. v. Am. Ash Recycling Corp.*, 895 A.2d 595, 605-06 (Pa. Super. 2006) (involving affirmative representations about the quality of a product on which a third party relied to pursue a project). Neither case stands for the proposition that a court will transform representations about present intentions into binding promises of future action.

We recognize, as the District Court did, that the "promise" sufficient to support an estoppel claim can take

41

different forms under Pennsylvania law. *See Waterfront V*, 829 F. Supp. 2d at 304 (collecting cases). However, we think that an important principle of contract law is controlling here: whether a plaintiff's actions constitute "a sufficient promise to invoke the doctrine . . . is a question ultimately of the objective reasonableness of any reliance." CORBIN ON CONTRACTS § 8.12, at 176 (analyzing Pennsylvania law). Waterfront is a sophisticated, experienced developer. If it interpreted any of the encouragement by the City as a promise of perpetual support for the Project, any subsequent reliance based on such interpretation was unreasonable and, therefore, not actionable.

## IV.    Conclusion

Waterfront's constitutional challenge to the height restriction imposed by the March 2006 Ordinance was properly dismissed. Waterfront asserted a facial challenge against the 65 feet height restriction imposed by that ordinance. When the City rescinded that restriction, Waterfront obtained exactly the type of relief it sought and, therefore, it no longer had a claim for prospective relief. The remedies of compensatory or nominal damages are not available when a facial attack on a zoning ordinance rests on either a theory that the law violated equal protection or was arbitrary and capricious, or that the plaintiff was harmed by the mere enactment of the restriction.

Nor did the District Court abuse its discretion in refusing to allow Waterfront a further amendment to its complaint. The gravamen of Waterfront's claim is that the height restriction was unconstitutional, and it had years to explicitly mention that it also challenged the width restriction.

It did not do so until the eleventh hour, without offering any cogent explanation for this delay. Under these circumstances, it was well within the District Court's discretion to refuse to permit further amendments.

Finally, the District Court correctly concluded that the Central Delaware Riverfront Overlay was not unconstitutionally vague and did not violate substantive due process, and that Waterfront had offered no evidence on which to base a claim for promissory estoppel or detrimental reliance.

For the foregoing reasons, we will affirm the District Court's judgment.